MADDIX *v.* STATE OF INDIANA.

[No. 31,096. Filed April 11, 1968.]

*Charles E. Johnson,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, and *Michael V. Gooch,* Deputy Attorney General, for appellee.

HUNTER, J.—Appellant Ray Dell Maddix was found guilty in 1962 of the crime of robbery after trial to the court in Marion Criminal Court, Division One. For reasons not in issue here, this Court ordered this belated pauper appeal.

The evidence in the case, when viewed most favorably to the State, *Capps* v. *State* (1967), 248 Ind. 472, 229 N. E. 2d 794, reveals the following:

On January 13, 1962, at about 10 o'clock in the morning Sam's Package Liquors, an Indianapolis retail liquor store, was robbed by a man carrying a pistol. There were two

other persons in the store during the entire duration of the robber's presence. A third person, who had entered just ahead of the robber, made a quick purchase and departed while the robber was standing in the store.

Frances Bailey testified that she was the sales clerk in the store at the time of the robbery, that the robber caused her to be frightened, and that he took money from the register. During the trial, she positively identified the appellant as the robber. She had previously identified appellant as the robber from police photos and at a police line-up. She was adamant in her identification.

The other customer who was in the store for the entire duration of the robber's presence, one Dale Broady, was not produced at trial. Sgt. Dabner, a police officer, testified that Broady was out of the city but that Broady had been at the line-up and had been asked to identify the robber.

The patron who entered the store a few steps ahead of the robber and left immediately after making a purchase was not produced at trial.

The appellant testified that on January 13, 1962, from approximately 9 o'clock in the morning until early in the afternoon he was with a group of friends at 3418 North Kenwood where a card game was in progress. Two witnesses corroborated the appellant's alibi.

*There were substantial contradictions between the testimony of Frances Bailey and that of Sergeant Dabner* with regard to the number of police photos shown to Frances Bailey and with regard to the height, weight, build and general physical appearance of the subjects in the police line-up. Frances Bailey testified she was shown *ten or twenty photos* of suspects. Sergeant Dabner testified that she was shown *at least two hundred.* Frances Bailey said the subjects in the line-up were of *different builds*; Sergeant Dabner described the line-up subjects as being of *pretty close to the same build.*

The only direct evidence of appellant's guilt was the testimony of Frances Bailey. No gun or other evidence was produced.

After all the evidence was in and both sides rested their cases, the trial court said:

"Well, it's a question of whether I believe this witness (Frances Bailey) or not. She had plenty of time to see him. I'm going to make a finding of guilty in this case. She's positive and picked him out of a line-up and *the other man was there too, although he's not in Court today.* When the defendant was confronted with this evidence he refused to talk. I'll make pronouncement of judgment on Friday, June the 1st. *Now Lieutenant, during the interim, if Mr. Maddix would like to submit to a polygraph test,* uh— LT. DAVENPORT INTERPOSING: He refused to your Honor. THE COURT CONTINUING: *We consider it as part of the sentence. It's up to him.* THAT'S ALL." (our emphasis)

Thereafter, on June 1, 1962, appellant was present in court for pronouncement of judgment, and after a final argument by appellant's trial counsel questioning the sufficiency of the evidence, the following proceedings occurred:

THE COURT: Well, it wasn't quite like that. The woman positively identified him. She had a good look at him. *There was another man that identified him at the line up according to Sgt. Dabner, and so I had to find him guilty. And to give him the benefit of any doubt I asked Sgt. Dabner to give him a polyograph test* to see if he wanted to take one. Now, I understand he did take it, is that right Sergeant?

SGT. DABNER: He did Your Honor on or about the 24th day of May, 1962.

THE COURT: And the results were, uh—

SGT. DABNER: The four pertinent questions that were asked defendant Maddix, in accordance with Sgt. Hickman's findings, showed deception.

THE COURT: *So I think that reaffirms the Court's case.* I think that this man probably was a good man. He's got a record here that shows he probably done some fighting and drinking, and he's got another Burglary charge pending in this Court too, which I assume will be dismissed.

However, you can file your Affidavits. It's part of a motion for a new trial if you wish.

MR. WILSON: Yes.

THE COURT: At this time, in view of all the facts, I have no alternative. This woman was positive and *then he showed deception on the test.* I tried to give him every chance, and his age is 34?

DEFENDANT: 33.

THE COURT: 33. All right. He goes to the State Prison at Michigan City for not less than 10 years nor more than 25 years. He will be disfranchised during his prison years. I presume we can anticipate a Nolle on this other case so we can wind everything up. (our emphasis)

The foregoing short portion of the record is set out above so as to clearly demonstrate for purposes of the discussion below, the precisely expressed basis of the trial court's finding and judgment.

Appellant, in his motion for new trial, makes several allegations which he believes merit the granting of a new trial, but a discussion of his challenge to the sufficiency of the evidence will be more than sufficient to dispose of this matter.

As part of his contention contesting the sufficiency of the evidence to support the finding of the trial court, appellant challenges the propriety of the trial court's consideration of evidence as to Dale Broady's identification of appellant as the robber and the trial court's consideration of a post-finding polygraph test in rendering judgment.

As noted above, Dale Broady was not produced at the trial of this cause. Appellant contends that Sgt. Dabner's testimony that Broady had identified appellant at the line-up was *pure hearsay.* From a close examination of the records, however, we are unable to find even hearsay testimony which would indicate that Broady identified the appellant. All the testimony by Sgt. Dabner on this point was as follows:

"Q. Was Dale Broady there (at the line-up)?

A. He was.

Q. Dale Broady is not in the Court Room—was he asked to identify?

A. He was.

Q. Now, Dale Broady is not in the Court Room today, do you know the whereabouts of Dale Broady today?

A. He is out of the City at this time.

. . . .

Q. Did you have any further conversations with him (the defendant) after that?

A. Yes, on the 25th day of February, 1962, at the Marion County Jail we informed him that he had been positively identified by the—Miss Bailey and also Mr. Broady; that they had identified the number five man in the line, being defendant Maddix who had used a name of Aaron Brown."

A close examination of this testimony reveals that Sergeant Dabner testified to nothing more than;

(a) that Broady was present at the line-up,

(b) that Broady was asked to make an identification, and

(c) that some time later, Sergeant Dabner told defendant that Broady had identified him at the line-up.

*Sergeant Dabner never testified that Broady did, in fact, identify appellant as the robber*; and if he had so testified there would have arisen a grave question as to whether ■ such testimony would have constituted hearsay. Therefore, there was no evidence in the record to support the express finding, twice alluded to by the trial court, that Broady identified appellant as the robber.

We also believe, the trial court's consideration of the polygraph test, having already made a finding of guilty, was error prejudicial to defendant. It will be noted that in ■ bringing the results of the polygraph test before the court, Sgt. Dabner, who testified to those results, was not shown to have any expertise in the field. All of Dabner's testimony as to the polygraph test was hearsay, having come originally from one Sergeant Hickman who purportedly ad-

ministered the test and who was not shown by the record to have any expertise in the field either.

Furthermore, in giving the court the results of the polygraph test, Sergeant Dabner said, "The four pertinent questions were asked defendant Maddix, in accordance with Sergeant Hickman's findings, showed deception." The court did not ask Sergeant Dabner what the "four pertinent questions" were, and no cross-examination of Sergeant Dabner or Sergeant Hickman took place.

Forgetting, for the moment, the many flagrant weaknesses in the testimony relative to the polygraph test, much more important problems arise in relation to the propriety and the relevancy of such a unilateral investigation on the part of the trial court.

It is a long-standing tenet of Indiana law that it is reversible error for a jury to consider any evidence not properly admitted at trial. *Jones* v. *The State* (1883), 89 Ind. 82. For the jury to consider evidence not properly placed before it at trial is made a cause for new trial under Ind. Anno. Stat. § 9-1903, (Repl. 1956). Surely, when trial is to the court, the court, as the trier of both the facts and the law, is bound by the same rule and may not consider matters *dehors* the trial record in determining the guilt or innocence of the defendant. Yet, the trial of this case had ended almost a month prior to the date on which the polygraph test results were considered by the court.

Furthermore, when the polygraph test was ordered and later considered by the court, a finding of guilty had already been made. That being so, what possible purpose could a polygraph test upon appellant serve, if not to remove some substantial reasonable doubt in the mind of the trial court as to appellant's guilt?

"A defendant is presumed to be innocent until the contrary is proved. Where there is a reasonable doubt whether his guilt is satisfactorily shown, he must be acquitted . . ." Ind. Anno. Stat. § 9-1806 (Repl. 1956)

Thus, if a reasonable doubt as to appellant's guilt existed in the trial court's mind at the conclusion of the trial, the court had only one course to follow—a finding of not guilty. On the other hand, if there was no reasonable doubt in the court's mind when he made the finding of guilty, the polygraph test was completely superfluous and irrelevant to all that was to follow.

The trial court, in suggesting the polygraph test, stated that if appellant took the test, the results would be considered in the rendition of sentence. What would the trial court have done if the polygraph test had shown appellant innocent? Would he have withdrawn his finding of guilty on the basis of evidence not in the record? Would he have let the finding stand and suspended the sentence because he believed him innocent?

In either of these cases, just as in the present case, such conduct would be improper and unacceptable. The record before us demonstrates on its face that in entering judgment, the trial court considered improperly gathered, incompetent and irrelevant evidence, and in doing so, prejudiced the substantial rights of the appellant.

Such practices as those set out above are entirely inconsistent with the whole theory of trial by adversary proceeding and are wholly inconsistent with the most basic of Anglo-American evidentiary rules. To allow them to occur as a matter of course in the trial courts of this State would lead to repetitive and stark injustice.

This erroneous conduct, when viewed in combination with the contradictions and infirmities in the State's case, requires a reversal of the judgment heretofore entered. This case is reversed and remanded to the court below with instructions to vacate the judgment heretofore entered and to grant appellant's motion for new trial.

Judgment reversed.

Lewis, C. J., Arterburn, Jackson and Mote, JJ. concur.

NOTE.—Reported in 235 N. E. 2d 475.