NOEL MCDONALD v. STATE OF INDIANA.

[No. 2-974A222. Filed May 28, 1975.]

*Patrick N. Ryan, Jack B. Welchons, Ryan & Welchons,* of Marion, for appellant.

*Theodore L. Sendak,* Attorney General, *Russell W. Sims,* Deputy Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant Noel McDonald was tried to the court and convicted of statutory rape. IC 1971, 35-13-4-3, Ind. Ann. Stat. § 10-4201 (Burns Supp. 1974). The single issue presented for review is whether the trial judge committed reversible error when he intervened as defendant was testifying on his own behalf and inquired as to his willingness to submit to a polygraph examination. For the reasons hereinafter stated, we conclude that the judge's inquiry violated defendant's privilege against compulsory self-incrimination and that the error resulting was not harmless.

The facts most favorable to the State reveal that on July 1, 1973, the prosecutrix, who was then thirteen years of age, was watching television at the home of a friend. Defendant was also present, and after having given several other children a ride on his motorcycle, he gave the prosecutrix a ride. During the course of the ride, they stopped in the country, and each smoked a cigarette. The prosecutrix testified that defendant then informed her that he needed oil for his motorcycle, and they drove to his house. Upon arrival, defendant asked the prosecutrix if she wished to go inside for a few minutes. The prosecutrix testified that after they went inside, defendant seated himself beside her and put his hand inside her blouse and, thereafter, grabbed her hand and led her upstairs to a bedroom, undressed her, and had intercourse with her. On the following day, the prosecutrix informed two other persons of the alleged rape. One of these persons in turn related the incident to the girl's mother. On July 5, 1973, the prosecutrix was examined by a physician; however, the results of the examination were inconclusive.

Defendant testified at trial in his own behalf and denied the alleged act of intercourse. He stated that following the stop in the country, he drove the prosecutrix back to the residence from which they had departed without stopping at any other location. The intervention of the trial judge followed defendant's denial of the alleged rape and appears in the record as follows:

*"Court:* I was wondering, how about letting the—see you've got two witnesses, one—how about taking a lie detector test? Would you be willing to take one would you?
*Defendant:* It all depends on my lawyer.
*Court:* Would you be willing to take one would you?
*Prosecuting Attorney:* She already has, Judge.
*Court:* What?
*Prosecuting Attorney:* She already has.
*Court:* I didn't hear what you said.
*Prosecuting Attorney:* She already has, Judge.
*Court:* A lie detector test?
*Prosecuting Attorney:* That's right.

*Court:* Are you willing for your client to take that test?

*Defendant's Attorney:* I'd have to think about that one, Judge.

*Court:* I wouldn't think you'd have to think about it.

*Defendant's Attorney:* I don't know why, Judge. You're going to adjourn at four o'clock, that's twelve minutes from now. Is there any reason why I need to give you an answer before tomorrow morning?

*Court:* I want, I want—in every case that I try I want to be right. I don't want to be wrong at any time. And in these rape cases you only have two witnesses, the victim and, and the one that committed the rape. I, I've been in a good many rape cases and I know and that they are very difficult cases to decide because you've got to decide between two.

*Defendant's Attorney:* Your Honor, my only hesitancy, my only hesitancy is this. I have been involved, now—the polygraph is a very scientific instrument.

\* \* \*

*Court:* I tell you, we'll take the evening adjournment at this time and you think it over. Because I, I want to be right in this matter and this is a serious case, a serious matter, very serious. This young girl here, only thirteen years of age, and it's a very serious offense. A girl under twelve years of age is a life sentence.

*Defendant's Attorney:* That's right, Your Honor.

*Court:* And this carries what? What is it? Two to Twenty years? Something like that. And it's a very serious and— every rape case almost you only have two witnesses. Now, here's a little girl thirteen years old. Just what purpose under the shining sun would she have of coming in here and accusing some man of having raped her, see? What purpose, what reason, what grounds? You know there's always a reason for everything.

*Defendant's Attorney:* That's right.

*Court:* And, and I would like to get at the absolute truth and I think a lie detector test, I've found them very successful myself. And, you think it over and—

\* \* \*

*Defendant's Attorney:* May it please the Court.

*Court:* Yes.

*Defendant's Attorney:* I would respectfully move at this time for a mistrial. I believe the comments with reference to a lie detector are not appropriate in this type of a case

or any other kind of a criminal case. Further, Your Honor, I would move that the competency of the Prosecuting Witness be further delved into. I believe the Court has indicated from his comments that the competency is in question and the Indiana Supreme Court has indicated means by which this competency can be ascertained.

*Court:* Of the Prosecuting Witness?

*Defendant's Attorney:* Of the Prosecuting Witness. That's right, Your Honor.

*Court:* Objection overruled.

*Defendant's Attorney:* Did you rule on my motion, Your Honor, for mistrial?

*Court:* That was overruled."

Following this exchange, defendant completed presentation of his case, and neither the judge nor the parties made any further reference to the court's request.

## I.

As a consequence of the inquiry, the trial judge became apprised of two significant facts. First, the prosecuting attorney revealed to the court that the prosecutrix had already submitted to a polygraph examination. Secondly, implicit in the resolution of the inquiry was the apparent unwillingness of the defendant to submit to such an examination. In attempting to determine whether the acquisition of this information by the court resulted in error, we have turned to recent criminal decisions of this jurisdiction in which questions concerning the use of polygraph examinations have been considered. A brief review of those decisions will be helpful in placing the questions presented herein into proper perspective.

Use of the results of polygraph examinations either contributed or led to reversal by our Supreme Court of two criminal convictions in 1968. In neither case, however, did the court formulate any general principles governing use of test results. In *Maddix* v. *State* (1968), 250 Ind. 261, 235 N.E.2d 475, the defendant had been tried to the court and convicted of robbery. Following trial, and after a finding of

guilty, yet prior to the entry of judgment, the court ordered a polygraph examination of the defendant and considered the results thereof. The Supreme Court noted many "flagrant weaknesses" in the manner in which the test results were communicated to the court. The results were presented by hearsay testimony, and neither the witness nor the person who administered the test were shown to have any expertise in the field. Further, the alleged "four pertinent questions," the defendant's answers to which "showed deception," were not presented to the court. The primary ground for reversal, however, appears to have stemmed from the fact that the test was ordered and the results were considered *subsequent* to the trial court's finding of guilty. It was reasoned that the only possible purpose of the test would have been to remove some substantial reasonable doubt in the mind of the trial judge as to the defendant's guilt and that since the test results constituted matters *dehors* the trial record, consideration of them constituted reversible error.

In *Carpenter* v. *State* (1968), 251 Ind. 428, 241 N.E.2d 347, the results of polygraph examinations of the defendants were transmitted to the trial court in the form of a letter. Examination of the trial record failed to reveal that the results were properly introduced into evidence. No exhibit mark was attached or assigned to the letter. There was no showing that defendants or their counsel were present when the letter was received, and its author was neither under oath nor present in court for examination or cross-examination. Further, the letter was not authenticated. In addition to the lack of proper introduction into evidence, the letter was incompetent as hearsay. Predicating its reversal on the foregoing evidentiary defects, the court specifically declined to rule on the legal validity of polygraph testing.

The first definitive ruling on the subject came in *Zupp* v. *State* (1972), 258 Ind. 625, 283 N.E.2d 540. Therein, defendant assigned as error the ruling of the trial court denying his motion to compel discovery of the results of a polygraph

examination which had been administered to the prosecuting witness. Refusing to find reversible error, our Supreme Court held not only that the results of the test were inadmissible, but also that they would neither lead to the discovery of admissible evidence nor aid the defendant in the preparation of his case. In a decision rendered one month following the ruling laid down in *Zupp, supra,* the court failed to find error in the admission of testimony of a polygraph examiner who, as a rebuttal witness for the State, testified as to the results of a polygraph test requested by and administered to the defendant. *Reid* v. *State* (1972), 259 Ind. 192, 285 N.E.2d 279. The holding turned upon the fact that in his petition requesting the examination, the defendant expressly waived any and all objections to use of the results at trial.

*Zupp, supra,* and *Reid, supra,* clearly establish the principle that absent some form of waiver or stipulation by the parties, the results of polygraph examinations administered to witnesses or parties are not competent evidence in criminal prosecutions. The inevitable question posed by the State in its brief is whether this principle is of sufficient breadth to render inadmissible evidence of the mere fact of the administration of a polygraph examination. Dispositive of the question are the following recent decisions. In *Robinson* v. *State* (1974), Ind. App., 309 N.E.2d 833, this court found no error in the decision of the trial court granting the State's motion in limine seeking admonishment of witnesses and counsel ". . . to refrain from referring to or commenting upon, directly or indirectly, . . ." the fact that defendant had been administered a lie detector test.[1] More recently, in *Austin* v. *State* (1974), 262 Ind. 529, 319 N.E.2d 130, it was recognized that the disclosure of facts which might reveal to the jury that the defendant had undergone a polygraph examination is error.

On the basis of the foregoing analysis, it is apparent that

---

1. Granting transfer in *Robinson* v. *State* (1974), 262 Ind. 463, 317 N.E.2d 850, the Supreme Court specifically agreed with the disposition of this issue by the opinion of this court.

an evidentiary consequence of the inquiry conducted by the trial judge was to bring before the court information which would not have been admissible if offered by one of the parties. Moreover, with respect to the election offered to the defendant, there arises a question upon which the courts of this jurisdiction have not yet specifically ruled; that is, the extent, if any, to which the constitutional privilege against compulsory self-incrimination attaches to the use of polygraph testing in criminal proceedings.

It is well settled that the privilege does not attach to tests of a mere physical nature. As our Supreme Court wrote in *Hollars* v. *State* (1972), 259 Ind. 229, 286 N.E.2d 166:

"The 5th Amendment privilege against self incrimination has been held to reach only compulsion of the accused's communications and responses which are also communications, that is evidence in the form of testimony or that which is testimonial in character. It does not shield against compulsory submission to tests that are merely physical or produce evidence that is only physical in nature, such as fingerprints, measurements, voice or handwriting exemplars, or physical characteristics or abilities. *Schmerber* v. *California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908; *Gilbert* v. *California* (1967), 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; *Heichelbech* v. *State* (1972), [258] Ind. [334], 281 N.E.2d 102." See also, *Frances* v. *State* (1974), 262 Ind. 353, 316 N.E.2d 364.

However, persuasive dictim by the United States Supreme Court in *Schmerber* v. *California, supra,* compels us to the conclusion that polygraph examinations are testimonial, rather than merely physical, in nature and that use of the tests is therefore subject to the protections of the Fifth and Fourteenth Amendments. In that decision, the court wrote:

"Some tests seemingly directed to obtain 'physical evidence,' for example, lie detector tests measuring changes in body function during interrogation, may actually be directed to eliciting responses which are essentially testimonial. To compel a person to submit to testing in which an effort will be made to determine his guilt or innocence on the

basis of physiological responses, whether willed or not, is to evoke the spirit and history of the Fifth Amendment. Such situations call to mind the principle that the protection of the privilege 'is as broad as the mischief against which it seeks to guard,' *Counselman* v. *Hitchcock,* 142 U.S. 547, 562."

Moreover, implicit recognition of the testimonial character of polygraph examinations appears in our Supreme Court's decision in *Reid* v. *State, supra.* Therein, the court determined that defendant's express waiver in his petition requesting the polygraph examination precluded any claim of a Fifth Amendment violation by the subsequent admission of the test results into evidence.

In *Bowen* v. *Eyman* (D. Ariz. 1970), 324 F. Supp. 339, the *Schmerber* dictum was of considerable influence to the court's decision recognizing the constitutional dimensions of polygraph testing. We are in agreement with the following conclusions by the court as to the application of the privilege:

> "This Court, after considering the relevant authority, and mindful of the dicta in *Schmerber* v. *California, supra,* is of the opinion that a compulsory lie detector examination would infringe upon the privilege against self-incrimination.
>
> "If the Court is correct in its conclusion, it follows that the testimony concerning petitioner's refusal to take the test was constitutionally impermissible. Proof of silence or invocation of the privilege violates the Fifth Amendment. E.g., *Miranda* v. *Arizona,* 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1624-1625, 16 L.Ed.2d 694 (1966) ; *United States* v. *Semensohn,* 421 F.2d 1206 (2d Cir. 1970) ; *United States* v. *Wick,* 416 F.2d 61 (7th Cir.), cert. denied, 396 U.S. 961, 90 S.Ct. 436, 24 L.Ed.2d 425 (1969) ; *Fowle* v. *United States,* 410 F.2d 48 (9th Cir. 1969) ; *Boeckenhaupt* v. *United States,* 392 F.2d 24 (4th Cir.), cert. denied, 393 U.S. 896, 89 S.Ct. 162, 21 L.Ed.2d 177 (1968) ; *United States* v. *McKinney,* 379 F.2d 259 (6th Cir. 1967)."

In the case at bar, introduction by the State of evidence of the defendant's unwillingness to submit to polygraph testing would have been violative of the defendant's Fifth Amendment privilege. That the trial judge, rather than the prosecution, caused the informa-

tion to be brought before the court renders it no less of a constitutional violation.

## II.

The State adamantly insists that any error in the action taken by the trial judge was harmless, relying upon the general principle according a wider latitude of judicial behavior in a trial to the court without the intervention of a jury. We recognize that in a court trial there is substantially less probability that evidentiary error will result in harm. See, *King* v. *State* (1973), 155 Ind. App. 361, 292 N.E.2d 843. At the same time, however, we must recognize that the presence of federal constitutional error requires application of the federal harmless error standard. That standard requires reversal unless we can determine as a matter of law that the error was harmless beyond a reasonable doubt under the circumstances of the case. Cast in somewhat different terms, the standard requires a showing beyond a reasonable doubt that the error did not contribute to the conviction. *Chapman* v. *California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Larimer* v. *State* (1975), 163 Ind. App. 673, 326 N.E.2d 277.

The rationale underlying the principle recognizing the diminished probability of harm arising from evidentiary error in a court trial was expressed as follows in *King* v. *State, supra:*

> "It must be remembered that a trial judge is presumed to know the intricacies and refinements of the rules of evidence and that he sifts the evidence and weighs it in the light of his legal experience and expertise. He is thus able to separate the wheat from the chaff, ignoring the extraneous, the incompetent and the irrelevant and it is only when his judgment has apparently or obviously been infected by erroneously admitted evidence that we will set it aside. Rule TR. 61, IC 1971, 34-5-1-1."

Thus, it is considered that the trial judge when sitting as the finder of fact will ignore incompetent evidence tendered

by the parties in arriving at his determination. Clearly, such a presumption cannot logically obtain where the judge himself solicits the incompetent evidence or otherwise causes it to be brought before the court.

In the case at bar, the determination of guilt turned largely upon the court's assessment of the credibility of the prosecutrix and the defendant. This is reflected in the following statement by the trial judge during his inquiry:

> "I want, I want—in every case that I try I want to be right. I don't want to be wrong at any time. And in these rape cases you only have two witnesses, the victim and, and the one that committed the rape. I, I've been in a good many rape cases and I know and that they are very difficult cases to decide because you've got to decide between two."

Indeed, the very fact of the inquiry itself suggests that the judge was experiencing difficulty in assessing the credibility of the witnesses and yet entertained a reasonable doubt as to defendant's guilt. Compare, *Maddix* v. *State, supra.*

Turning to the fruits of the judge's inquiry, the willingness of the prosecuting attorney to divulge the information that the prosecutrix had already been administered a polygraph examination presents a strong inference that the results of the test supported her testimony. This inference, when coupled with the defendant's apparent unwillingness to submit to testing, creates a further inference that the results of a test of the defendant might not bear favorably on the credibility of his testimony.

On the basis of the foregoing analysis, we are unable to conclude beyond a reasonable doubt that the error occasioned by the trial judge's inquiry did not contribute to his determination of defendant's guilt. Therefore, the judgment of conviction must be reversed, and this cause is remanded with instructions to grant defendant a new trial.

Reversed and remanded.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 328 N.E.2d 436.