Tyrone O'NEAL, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–9811–CR–570.

Court of Appeals of Indiana.

Sept. 16, 1999.

Rehearing Denied Nov. 4, 1999.

Hilary Bowe Oakes, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi E. Froug, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge.

### Case Summary

Appellant-defendant Tyrone O'Neal ("O'Neal") appeals his conviction for possession of cocaine with intent to deliver as a Class A felony. We affirm in part and remand in part.

### Issues

O'Neal presents three issues for review, which we restate as follows:

(1) whether the trial court erred in considering O'Neal's pretrial statements to assess his credibility at trial;

(2) whether the trial court erred in allowing Officer Michael Horn ("Officer Horn") to testify regarding whether the 66 grams of crack cocaine and $1,128 in cash recovered from O'Neal were consistent with amounts possessed by a "user" of cocaine;

(3) whether the State presented sufficient evidence to support O'Neal's conviction for possession of cocaine with intent to deliver as a Class A felony.

We raise one issue *sua sponte:* namely, whether the trial court erred in failing to vacate O'Neal's conviction for possession of cocaine as a Class C felony.

### Facts and Procedural History

The facts most favorable to the judgment indicate that early in the morning of October 8, 1997, Officer Horn of the Indianapolis Police Department ("IPD") saw a car with a cracked rear tail light in the 3100 block of North Arlington Avenue in Indianapolis, Indiana. Officer Horn activated the emergency lights on his police car to initiate a traffic stop for the infraction, and the vehicle came to a stop in a liquor store parking lot. Officer Horn approached the driver and obtained his driver's license, after which he noticed that the passenger seated behind the driver appeared to be "extremely nervous." Concerned that the man "was about to go into convulsions" and "extremely nervous" himself, Officer Horn asked the backseat passenger to step out of the car and patted him down. Officer Horn found a bag of marijuana in the passenger's back pants pocket and tossed the bag onto the trunk of the car; he then noticed that O'Neal, who was sitting next to the driver, had shoved a clear plastic bag into his pants and had cracked open the passenger-side door. Officer Horn walked to the passenger side of the vehicle, whereupon O'Neal jumped out of the car and fled across Arlington Avenue onto 30th Street with a small automatic pistol in his hand. Officer Horn left the scene of the traffic stop and chased after O'Neal on foot.

During the pursuit, O'Neal stopped beside a parked car, and Officer Horn halted on the opposite side of the car. After Officer Horn unsuccessfully attempted to subdue him with chemical spray, O'Neal raised his handgun and pointed it at the officer. Officer Horn ducked behind the car, pulled out his handgun, and ordered O'Neal to drop his weapon. Instead, O'Neal ran up the street and darted between two houses, where Officer Horn saw him remove the clear plastic bag from his pants and toss it next to a garage. O'Neal stopped in front of a privacy fence, threw his handgun over the fence, and was then knocked down, sprayed, and handcuffed by Officer Horn. Incident to O'Neal's arrest, Officer Horn searched his person and found $1,128 in cash, the majority of which consisted of $20 bills. IPD officers later recovered O'Neal's handgun and the clear plastic bag he had discarded during the chase; the bag contained what was later determined to be approximately 66 grams of crack cocaine, a paper towel, and approximately 10 smaller clear plastic bags.

On October 9, 1997, the State charged O'Neal with the following five counts: Count I, possession with intent to deliver cocaine in an amount greater than three

grams as a Class A felony;[1] Count II, possession of cocaine in an amount greater than three grams as a Class C felony;[2] Count III, resisting law enforcement as a Class D felony;[3] Count IV, pointing a firearm as a Class D felony;[4] and Count V, carrying a handgun without a license as a Class A misdemeanor.[5] A bench trial was held on August 18, 1998, after which the court found O'Neal guilty as charged on all five counts.

During O'Neal's sentencing hearing on October 23, 1998, defense counsel mentioned that on September 2, 1998, he had filed a motion to reconsider the trial court's verdict as to Count I, possession of cocaine with intent to deliver.[6] After hearing oral argument on the evidence supporting this conviction, the trial court made the following statement:

> Gentlemen, I was comfortable with my verdict the day I rendered it. I remain comfortable with it. And for the record—and I have given it a great deal of thought since the time we were in here, but I cannot ignore that [O'Neal's girlfriend, Kianna Taylor ("Taylor")] did say that she didn't see any signs of abuse. The amount again troubles me. The amount of money on him troubles me. And I will address that by saying that while he testified that he worked, your client also has to live with the fact that he kept telling this court lots of different stories while on pretrial release, which turned out not to be true. And I'm sorry, but I do factor that into it when he testifies. And he did have items that, if not ready for packaging, could quickly be gotten ready for packaging, so I am going to enter judgment of conviction on the dealing as a Class A felony.

The trial court sentenced O'Neal to 20 years' imprisonment (executed) on Count I, enhanced by five years (suspended) for the use of a handgun; one and one-half years on Count III, to be served concurrently with the sentence for Count I; one and one-half years on Count IV, to be served concurrently; and one year on Count V, to be served concurrently. O'Neal was also sentenced to three years' probation. The abstract of judgment form reflects that the trial court merged O'Neal's conviction for Count II (possession of cocaine) with his conviction for Count I (dealing in cocaine), and that he was not sentenced for his conviction for Count II. O'Neal now appeals his conviction for possession of cocaine with intent to deliver as a Class A felony.

### Discussion and Decision

#### I. Consideration of O'Neal's Pretrial Statements to Assess Credibility at Trial

During the sentencing hearing, the trial court referred to untruthful statements that O'Neal made while on pretrial release. O'Neal argues that the trial court's consideration of his pretrial statements outside the trial record for the purpose of assessing his credibility was improper, and that he was harmed by this alleged error. Although he correctly states that the only element at issue on Count I was his intent to deal cocaine, he mischaracterizes the extent of the trial court's reliance on his pretrial statements when he says that "[t]he Court specifically stated that [his] testimony was *disregarded* due to his prior testimonies at pre-trial hearings." (Emphasis supplied.) As the trial court noted, O'Neal's alleged prevarications were only a "factor" in its evaluation of his credibility, and the evidence adduced at trial was sufficient to sustain his conviction notwith-

1. IND.CODE § 35–48–4–1(b)

2. IND.CODE § 35–48–4–6(b)(1)

3. IND.CODE § 35–44–3–3(b)

4. IND.CODE § 35–47–4–3(b)

5. IND.CODE § 35–47–2–1

6. Neither the motion to reconsider nor a supporting memorandum appears in the record.

standing any error committed by the trial court.

█ The facts of the instant case present us with a unique challenge in approaching our review. In the usual course of events, a defendant must make a timely objection to the allegedly erroneous admission of evidence submitted by the State to preserve the error for appeal. *See, e.g., Sturma v. State*, 683 N.E.2d 606, 608 (Ind. Ct.App.1997). With respect to a bench trial, O'Neal correctly observes that

> it is considered that the trial judge when sitting as the finder of fact will ignore incompetent evidence tendered by the parties in arriving at his determination. Clearly, such a presumption cannot logically obtain where the judge himself solicits the incompetent evidence or otherwise causes it to be brought before the court.

*McDonald v. State*, 164 Ind.App. 285, 294–295, 328 N.E.2d 436, 442 (1975). Although we recognize that the trial court in the case at bar did not solicit or cause inadmissible evidence to be brought before it, it did voluntarily state that it had considered the veracity of O'Neal's pretrial statements in judging his credibility at trial. Because of the unusual circumstances surrounding the alleged error, we cannot rea-sonably conclude that O'Neal's assertion of error must be waived because he failed to object at the sentencing hearing.[7]

█ Ind. Trial Rule 61 states that no error in the admission of evidence "is ground for ... reversal on appeal ... unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." "[W]here evidentiary error has occurred, reversal is not required if it is apparent that the fact-finder did not rely upon the improper evidence in reaching the verdict." *Shanks v. State*, 640 N.E.2d 734, 736 (Ind.Ct.App.1994). In determining whether improper evidence was relied upon in reaching a verdict, we "should consider the probable impact of the evidence upon the fact-finder." *Id.* This Court may conclude that the trial court did not rely upon improper evidence "where there was other overwhelming evidence of guilt." *Id.* As the State points out, however, . O'Neal's argument seems to focus not upon the admissibility of the pretrial statements, but upon the fact that the statements "were not formally admitted into evidence at trial."[8]

7. We note that shortly after the trial court made its controversial statement, defense counsel made the following observation:

> And, Your Honor, as it relates to the Defendant's version, I have discussed with Mr. O'Neal the comment that he claimed that the drugs were produced later, that he's not sure where they came from, is inaccurate as to what he recalled he told the probation officer, would make no sense based upon his testimony for acknowledged possession of the drugs to take the position that he doesn't know where they came from, and he indicated to me that was not what he said.

It is impossible to determine whether defense counsel made this assertion in response to the trial court's statement, however, and O'Neal has failed to provide this Court with any transcripts of his pretrial hearings for review. Because we have determined that O'Neal's argument is more properly analyzed in the context of a challenge to the presumption of his innocence, we need not engage in a discussion of the admissibility of his alleged prior inconsistent statements under Ind. Evid. Rule 613; in any event, the lack of a proper record with respect to O'Neal's pretrial statements would frustrate our attempt to pursue such a discussion.

8. In light of these considerations, we find O'Neal's reliance on *Maddix v. State*, 250 Ind. 261, 235 N.E.2d 475 (1968) to be misplaced. In *Maddix*, the trial court perfunctorily considered the results of the defendant's polygraph test after reaching a verdict and before sentencing; our supreme court pointed out various "contradictions and infirmities in the State's case" and suggested that the only "possible purpose" served by the polygraph test was to "remove some substantial reasonable doubt in the mind of the trial court as to the appellant's guilt." 250 Ind. at 267–268, 235 N.E.2d at 478–479. The record before us clearly shows that the State's case against

■ Although the rules of appellate procedure prohibit this Court from formulating arguments on behalf of the parties, we are nevertheless convinced that O'Neal's argument may be more properly framed as a challenge to the trial court's presumption of his innocence at the formal commencement of trial. We have remarked that this presumption, "which belongs to every criminal defendant at the outset of trial, is a concept for protecting the accused *against being convicted upon doubtful evidence.*" *Bigbee v. State,* 596 N.E.2d 970, 972 (Ind.Ct.App.1992) (emphasis supplied). In a trial before the bench, the court is responsible for "weighing the evidence and judging the credibility of witnesses" as the trier of fact, and we shall not interfere with this function on appeal. *McInchak v. State,* 560 N.E.2d 546, 548 (Ind.Ct.App. 1990).

We find that the trial court in the instant case did not improperly rely on O'Neal's pretrial statements in reaching its guilty verdict. In fact, the trial court specifically stated that O'Neal's pretrial veracity was merely one factor it had considered in reaching its judgment, in addition to the amounts of cocaine and money recovered after his arrest; Taylor's testimony that she never saw him abusing cocaine; and the ease with which he could have packaged the cocaine for sale. The trial court also stated that it was "comfortable" with its verdict on the day of trial and "remain[ed]" comfortable with it over two months later at the sentencing hearing. Moreover, as will be discussed below, the State presented sufficient independent evidence of O'Neal's guilt with respect to his possession of cocaine with intent to deliver.

■ The unique nature of the alleged error simultaneously compels us to under-

O'Neal was significantly stronger than in *Maddix,* and that the trial court neither prejudged O'Neal nor harbored any reasonable doubt as to his guilt after hearing the evidence presented at trial.

9. 46 AM.JUR.2D *Judges* § 170 (1994) contains the following related comments:

take a fundamental error analysis, where an error to which no objection was made must be "so prejudicial to the rights of a defendant that he could not have had a fair trial." *Robinette v. State,* 641 N.E.2d 1286, 1288 (Ind.Ct.App.1994). "Fundamental error is blatant error which denies the defendant due process." *Id.* Although presumption of a criminal defendant's innocence is not specifically enshrined in either the U.S. or the Indiana Constitution, the U.S. Supreme Court "has declared that one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Taylor v. Kentucky,* 436 U.S. 478, 485, 98 S.Ct. 1930, 1934, 56 L.Ed.2d 468, 475 (1978). *See also Phillips v. State,* 550 N.E.2d 1290, 1302 (Ind.1990) (quoting *Taylor*); *Bledsoe v. State,* 274 Ind. 286, 292, 410 N.E.2d 1310, 1315 (1980) (presumption of innocence "safeguard[ed]" by Due Process Clause of the Fourteenth Amendment of the U.S. Constitution with respect to establishing guilt beyond a reasonable doubt with probative evidence).

■ The record plainly shows that the trial court neither prejudged O'Neal's guilt nor disregarded his testimony at trial, but simply formed an opinion regarding his credibility on the basis of his prior statements to the court, which O'Neal has failed to provide for our review. "A judge's ordinary and natural reaction to the conduct of, or evidence developed in, a case before it does not show bias on the part of the judge." *Ware v. State,* 560 N.E.2d 536, 542 (Ind.Ct.App.1990), *trans. denied* (1991), citing 46 AM.JUR.2D *Judges* § 170 (1969).[9] Consequently, we cannot

So long as a judge remains open minded enough to refrain from finally deciding a case until all the evidence has been presented, comments made by the judge during the course of the proceedings will generally not be considered as indicative of disqualifying bias or prejudice [footnote omitted ("[.]")].

say that the trial court committed fundamental error in considering O'Neal's pretrial statements as a factor in assessing his credibility; moreover, any error must be considered harmless in light of the overwhelming evidence of his guilt.

## II. Officer Horn's Testimony Regarding Amount of Cocaine Consistent with Dealing or Personal Use

According to O'Neal, Officer Horn was not sufficiently qualified by either training or experience to offer his opinion that the possession of 66 grams of cocaine and $1,128 by an arrestee was inconsistent with a user (as opposed to a dealer) of crack cocaine. O'Neal asserts that Officer Horn's lack of specialized narcotics training and his "mere" five years of experience as a "street level officer should not have been considered sufficient to qualify him to provide opinion testimony *as an expert would* regarding the implications" of the evidence regarding O'Neal's possession of the cocaine and the money. (Emphasis supplied.)

Immediately after Officer Horn was sworn in as a State's witness, the following colloquy occurred:

Q. [STATE] How long have you been employed as a patrolman with IPD?

A. [OFFICER HORN] Five years.

Q. And I'd like to—well, in that time, the 5 years, have you had occasion to arrest individuals for possession of crack cocaine?

A. Yes.

Q. And are you familiar with how crack cocaine is used by individuals, based on your experience?

A. Yes.

Q. Are you familiar with how crack cocaine is sold on the street level?

A. Yes.

Q. How many arrests have you made in your 5 years as an officer with IPD regarding crack cocaine usage?

A. Hundreds.

After Officer Horn recounted the events leading up to O'Neal's arrest, the following exchange took place:

Q. In your training and experience, is 66 grams of cocaine an amount that a user would have on their person?

[DEFENSE COUNSEL]: Your Honor, I'm going to have to object. I don't know if he's qualified to test to that—to testify to that.

COURT: I think he qualified himself earlier. He may answer.

A. No.

Q. Based on your past experience of arresting persons that have been using crack cocaine, is 66 grams consistent with a person who is using crack cocaine?

A. No.

Q. Is it—in your experience of making several hundred arrests of persons using crack cocaine, is it consistent—is finding $1128 on a person consistent with a person that uses crack cocaine?

A. No.

■ We review issues concerning the admissibility of evidence for abuse of discretion. *Timberlake v. State*, 690 N.E.2d 243, 255 (Ind.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999). We will only reverse the trial court "if the error is inconsistent with substantial justice." *Id.*; T.R. 61. O'Neal

It has been said that the traditional judicial view is that if a judge can be disqualified for bias following a comment or ruling during the court proceedings, there is no limit to disqualification motions and there would be a return to judge shopping[.] The general rule of law is that what a judge learns in his or her judicial capacity is a proper basis for judicial observations and the use of such information should not result in disqualifi-

cation[.] Thus mere criticism of a party or his attorney does not indicate prejudice[.] But, when a judge's remarks are so extreme that they show that his decision has been predetermined, improper bias or prejudice will be found to exist[.]

We do not find that the trial court's comments in the case at bar were sufficiently "extreme" to warrant the reversal of the its judgment.

argues that allowing Officer Horn to testify about the implications of the possession of the cocaine and the money "invaded the province of the trier of fact ... on the ultimate issue of intent." Ind. Evidence Rule 704 states that opinion testimony "is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact." Furthermore, the State correctly observes that the prosecuting attorney sufficiently demonstrated Officer Horn's qualifications as a "skilled witness" under Ind. Evid. Rule 701 "whose opinion could be helpful to the finder of fact."

■ A "skilled witness" may be defined "as a person with 'a degree of knowledge short of that sufficient to be declared an expert under [Ind. Evid.] Rule 702, but somewhat beyond that possessed by the ordinary jurors.'" *Mariscal v. State,* 687 N.E.2d 378, 380 (Ind.Ct.App.1997), *trans. denied* (1998), quoting 13B ROBERT LOWELL MILLER, JR., INDIANA EVIDENCE 196 (1996). As we noted in *Mariscal,* the seminal Indiana case on the evidentiary concept of skilled witnesses,

> In order to be admissible under Evid. R. 701, opinion testimony of a skilled witness or a lay person must be "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." The requirement that the opinion be "rationally based" on perception "means simply that the opinion must be one that a reasonable person normally could form from the perceived facts." [MILLER] at 195. The requirement that the opinion be "helpful" means, in part, that the testimony gives substance to facts which were difficult to articulate. *Id.* at 196.

687 N.E.2d at 380.

■ "The admission of opinion testimony is within the discretion of the trial

court." *Hanson v. State,* 704 N.E.2d 152, 155 (Ind.Ct.App.1999); *Mariscal,* 687 N.E.2d at 380. As the State established during direct examination, Officer Horn had served as an IPD patrolman for five years and had made hundreds of arrests related to the use of crack cocaine. Officer Horn amply demonstrated his familiarity with "street" drug terminology, the means of ingesting crack cocaine, and various methods of packaging the drug. Although Officer Horn's experience and training may not be sufficiently comprehensive to qualify him as an expert witness under Evid. R. 702, we conclude that he was sufficiently qualified as a skilled witness under Evid. R. 701 to offer his rationally based and helpful opinion on the issue of O'Neal's intent to deal crack cocaine.[10] Consequently, O'Neal's arguments regarding the qualifications of expert witnesses must fail, and we find that the trial court did not abuse its discretion in admitting Officer Horn's testimony on the issue of intent.

### III. Sufficiency of the Evidence

■ When reviewing a challenge to the sufficiency of the evidence, this Court neither reweighs the evidence nor judges the credibility of witnesses. *Hanson,* 704 N.E.2d at 155. We will consider only the evidence most favorable to the judgment, as well as inferences to be drawn therefrom. *Id.* We will overturn a conviction "only if no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." *Id.* O'Neal's arguments on this issue are essentially invitations for this Court to reweigh the evidence with respect to the issue of intent, which "can only be established by considering the behavior of the relevant actor, the surrounding circumstances, and

10. We note that O'Neal failed to object to Officer Horn's testimony that possession of $1,128 was inconsistent with being a user of crack cocaine and has thereby waived this contention for review. Waiver notwithstand-

ing, we find that Officer Horn was sufficiently qualified to offer his opinion as a skilled witness in response to the State's question on this point.

the reasonable inferences to be drawn from them." *Hazzard v. State,* 642 N.E.2d 1368, 1369 (Ind.1994). Every reasonable hypothesis of innocence need not be overcome on appeal; it is only necessary that an inference that supports the verdict may be reasonably drawn. *See id.* (jury trial).

O'Neal claims that the absence of any "items frequently associated with dealing cocaine, such as a pager, scales, dilution solutions, or transaction notes" must shed a reasonable doubt on his intent to deal crack cocaine. Given that O'Neal was arrested during the course of a traffic stop in the middle of the night, it is extremely unlikely that he would have been able to "cut" and weigh crack cocaine with scientific precision in the front seat of an acquaintance's car. Indeed, as both Officer Horn and the trial court observed, the large plastic bag containing the crack cocaine also held approximately 10 smaller plastic bags that O'Neal could have readily used to divide the 66 grams of cocaine into individual packages for sale. *See Lampkins v. State,* 682 N.E.2d 1268, 1276 (Ind. 1997), *modified on rehearing on other grounds,* 685 N.E.2d 698 (Ind.1997) (jury could infer intent to deal from evidence that "defendant was in constructive possession of an amount of cocaine greater than that ordinarily carried by an individual user and that the [4.28 grams of] cocaine was packaged for sale" in a medicine bottle and a plastic bag "and sorted according to price and size"); *Berry v. State,* 574 N.E.2d 960, 963 (Ind.Ct.App.1991), *trans. denied* ("Circumstantial evidence showing possession with intent to deliver may support a conviction." The more narcotics a person possesses, the stronger the inference that he intended to deliver it and not consume it personally.").

"Evidence of the illegal possession of a relatively large quantity of drugs is sufficient to sustain a conviction for possession with intent to deliver." *Hazzard,* 642 N.E.2d at 1369–1370. O'Neal claims that his "very heavy" cocaine habit and the fact that he twice tested positive for cocaine while on pretrial release should persuade this Court that his possession of 66 grams of cocaine for personal use "was not unbelievable."[11] Not only did O'Neal's girlfriend testify that she never saw him use cocaine, but he also did not possess any means of ingesting the cocaine at the time of his arrest. *See Berry,* 574 N.E.2d at 963 (defendant possessed large quantity of dilaudid tablets and "many small plastic bags and twist ties," but no paraphernalia for ingestion of narcotics at time of arrest; State presented "ample evidence to support the inference" of defendant's intent to deal narcotics). O'Neal also attempts to offer plausible explanations for his possession of a handgun and $1,128 in cash, but we will not invade the province of the trial court as the finder of fact by reweighing the evidence or judging the credibility of witnesses. *See id.; McClendon v. State,* 671 N.E.2d 486, 488 (Ind.Ct.App.1996) ("The trier of fact is free to believe or disbelieve witnesses, as it sees fit [citation omitted].").

### IV. Vacation of O'Neal's Conviction for Possession of Cocaine

As mentioned above, O'Neal was convicted of both possession of cocaine with intent to deliver as a Class A felony and possession of cocaine as a Class C felony; the trial court "merged" the latter conviction with the former and did not sentence O'Neal on the Class C felony. In *Abron v. State,* 591 N.E.2d 634, 636 (Ind. Ct.App.1992), *trans. denied,* we stated that possession of a narcotic drug "is an inherently included lesser offense" of dealing in

**11.** In its brief, the State mistakenly remarks that the 66 grams of cocaine is "33 times the amount [three grams] required to convict [O'Neal] of the class C felony of possession of cocaine"; the correct calculation is 22 times the statutory amount, which nevertheless raises a strong and reasonable inference that O'Neal intended to sell the crack cocaine rather than retain it for his personal use.

a narcotic drug "because it is impossible to commit the greater offense without committing the lesser offense." "Where the conviction of a greater crime cannot be had without commission of the lesser crime, double jeopardy considerations bar separate conviction and sentencing upon the lesser crime when sentencing is imposed upon the greater." *Id.* (footnote omitted).

Although O'Neal was not sentenced for the lesser included offense of possession of cocaine, his conviction therefor may not stand:

> We acknowledge that a trial court might understandably prefer not to vacate a conviction of a lesser offense in light of a conviction on the greater offense if there is any likelihood of an appellate reversal of the greater conviction. If, in such instance, there was no conviction of record on the lesser offense, quite obviously such conviction could not be affirmed. While the appellate forum, in reversing the greater conviction, might remand, giving authority to the trial court to enter a conviction upon the lesser offense, trial courts are not required to be so clairvoyant as to anticipate that prospect.

*Id.* at 637. Because we affirm O'Neal's conviction for possession of cocaine with intent to deal, we therefore remand this cause to the trial court with instructions to vacate his conviction for the lesser included offense of possession. In all other respects, however, we affirm the judgment of the trial court.

## Conclusion

The judgment of the trial court is affirmed in part with respect to O'Neal's conviction for possession of cocaine with intent to deliver as a Class A felony, and we remand this cause in part with instructions to vacate his conviction for possession of cocaine as a Class C felony.

KIRSCH, J., concurs.

DARDEN, J., concurs in result.