James **PATTON**, Appellant–Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 52A02–9010–PC–593.

Court of Appeals of Indiana,
Second District.

Nov. 4, 1991.

Transfer Denied Feb. 3, 1992.

Jane Ruemmele, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

SHIELDS, Judge.

James Patton appeals his convictions of burglary and theft. We affirm his convictions but remand for correction of his order of probation.

## ISSUES

1. Whether the trial court erred in admitting into evidence an out-of-court statement made by Patton after he refused to sign a written waiver of rights.

2. Whether the prosecutor committed acts of misconduct that placed Patton in a position of grave peril.

3. Whether the trial court erred in instructing the jury.

4. Whether the evidence is sufficient to sustain Patton's burglary conviction.

5. Whether the trial court erred during the sentencing hearing and in determining the terms of Patton's probation.

## FACTS

Todd Hyde testified he and Patton broke and entered the residence of the victim and took the victim's social security money. Patton was charged and convicted of burglary and theft. Patton was sentenced to twelve years for the burglary, four of which were suspended. He was sentenced to two concurrently served years for the theft.

## DISCUSSION

### I.

■ Patton claims the trial court erred in admitting his written statement into evidence during his cross-examination by the State. Patton specifically stated he had "no objection to State's Exhibit #3." Record at 361. Thus the error, if any, is not preserved. *See Lenoir v. State* (1987), Ind., 515 N.E.2d 529.

■ In any event, the statement did not contain any reference to Patton's assertion of either his right to remain silent or his right to counsel. The statement reflects only that Patton acknowledged he was advised of his rights, that he understood those rights, and that he was asked to sign a waiver but refused to do so. The relevant portion of the statement provides:

Q. Why did you refuse to sign the waiver of rights paragraph?

A. I'll wait.

Q. Okay, you say you'll wait, but you still will allow us to ask you questions in regard to the matters we've been discussing?

A. Uh huh.

Q. And you are willing to give a statement in regard to that?

A. Yes.

Q. You are willing to give us a statement in regard to what we're talking about then, right?

A. Yes.

Record at 362. Thus, contrary to Patton's assertion, the statement did not allow "the jury to know that Patton had exercised his right against self-incrimination" and thus does not constitute "an impermissible comment on his right to remain silent." Appellant's Brief at 16. Patton simply did not assert the right in his statement.

### II.

Patton claims several acts of prosecutorial misconduct placed him in a position of grave peril. None of the allegations of misconduct constitutes reversible error under the analysis in *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843, 848.

■ Patton claims error in the prosecution's questions about whether Patton and the prosecutor had talked "about this" on the day following Patton's statement. These questions stemmed from Patton's direct examination testimony that he never had the opportunity to provide a free-form written statement or answer an open-ended question such as "[t]ell us what happened?" Record at 404. The trial court did not err in concluding the State's questions were appropriately designed to impeach Patton by establishing he had in fact had other opportunities to tell his version of the events surrounding the night in question to representatives of the State.

■ Patton also complains the prosecutor impermissibly sought to impeach him with juvenile matters, some of which had not resulted in a finding of delinquency. Reversible error did not occur. Patton, as a witness for himself, testified he did not participate with Hyde in the burglary, "[b]ecause as a juvenile, I was mixed up in a crime like this." Record at 354. On cross-examination, the prosecution asked, "You testified that you didn't want to go in the house because as a juvenile you got mixed up in something. What was that?" Record at 382. Patton was asked if he understood the question and then, after an objection from his counsel, he was permitted to answer, "It was a breaking and entering and I spent time in jail. I spent five and a half months in jail." Record at 383. Thereafter, the jury was excused. Upon the jury's return, the trial court instructed the jury to "disregard any questions and answers that have been given concerning any other criminal acts in which Mr. Patton has been involved. As you recall from the preliminary instructions, that you will hear again in the final instructions, you should consider those matters as if you had not heard of them, at this point." Record at 388–89. A prompt admonishment is presumed to cure error resulting from the admission of improper evidence. *See Martin v. State* (1988), Ind., 528 N.E.2d 461, 464.

■ Finally, Patton claims the prosecution "attempted to invade the province of the jury by asking a witness who testified to comment on the truthfulness of Patton's testimony." Appellant's Brief at 19. The witness was asked if she had any way of knowing whether Patton was truthful when Patton denied knowing the victim was receiving social security money. Neither the question nor the negative response could have placed Patton in grave peril.

Patton's claim he was placed in grave peril by prosecutorial misconduct is without merit.

### III.

### A.

Patton claims the trial court erred in failing to instruct the jury that the offense of burglary as charged requires a knowing breaking and entering and in failing to define the phrase "with intent to" and the term "intentionally."

■ Patton waived his alleged errors; he failed to object to the omissions in the trial court's instructions and failed to tender his own instructions to correct the claimed inadequacies of the instructions. *See Clark v. State* (1990), Ind., 561 N.E.2d 759; *Whittle v. State* (1989), Ind., 542 N.E.2d 981, 991.

■ Neither do the omissions constitute fundamental error as claimed by Patton. Patton testified he was with Hyde when "he pushed on a window and it opened, and then that's where he went in, and I started to follow." Record at 351. Patton further admitted he had his legs through the window but he pulled them out and went to the car to wait for Hyde. Hence, Patton does not dispute his breaking and entering was done knowingly. Consequently, the trial court's failure to advise the jury the breaking and entering must be done knowingly, as charged in the information, and as required by *Gilliam v. State* (1987), Ind., 508 N.E.2d 1270, 1270 (the offense of burglary requires proof by the State that the defendant knowingly or intentionally broke and entered the structure) does not constitute fundamental error. *See Clarkson v. State* (1985), Ind., 486 N.E.2d 501. Unlike "knowingly" and "intentionally," which are terms of art, *Abercrombie v. State* (1985), Ind., 478 N.E.2d 1236, 1239, the phrase "with intent to" is a phrase of common understanding and need not be specifically and separately defined. Hence, the trial court's omission does not constitute fundamental error. Finally, the trial court was not obligated to define the term "intentionally" because it specifically advised the jury the conduct involved in the offense of theft, as charged, required the conduct be done only "knowingly" and specifically defined that term. The omission does not constitute fundamental error.

## B.

Next, Patton claims the trial court erred in giving the jury its final instruction no. 14 because it violates the presumption of innocence and requires the defendant to disprove his guilt.[1] Patton did not preserve his claim of error because he failed to object to the instructions when he was afforded that opportunity. *See Hodges v. State* (1988), Ind., 524 N.E.2d 774, 787.

## IV.

Patton, for his next claim of error, asserts the evidence is insufficient to sustain his conviction of burglary. However, his attack is based upon his claim that his testimony is more credible than that of Hyde because Hyde's testimony was given as part of a plea agreement and was thus "tainted." However, as observed by the State, the jurors were charged with determining the credibility of these two witnesses. They obviously chose to believe Hyde, being fully aware of the circumstances of his own participation. This is a decision that this court will not review. *See Gebhart v. State* (1988), Ind., 525 N.E.2d 603, 604.

## V.

Finally, Patton claims error in his sentencing hearing. He questions the fairness and impartiality of the trial judge based upon the judge's questions and comments designed to "encourage" Patton to tell the court the identity of individuals selling controlled substances in and about the community. He also asserts error in a condition of probation relating to the use of polygraph examinations.

## A.

At Patton's sentencing hearing the trial court asked Patton from whom he purchased drugs. When Patton persisted in his position that he did not know names, the trial court asserted: "Okay, I'm having to fight the urge to just flush the toilet on you right now...." Record at 163. The sentencing hearing continued and at its conclusion the trial court found numerous aggravating circumstances, the validity of which Patton does not contest.

The presumption of impartiality that clothes a trial court is not rebutted by the trial court's inappropriate statement. The long list of undisputed aggravating circumstances enumerated by the trial court balanced against the sole mitigating factor of Patton's age of nineteen years, convinces us that neither bias nor a lack of impartiality influenced the trial court's decision to enhance Patton's sentence.

## B.

Patton also complains the trial court erred in ordering "[a]s a term of probation any polygraph test taken of defendant will

---

1. The same instruction was given as the court's preliminary instruction no. 10 and reads:

   You are the exclusive judges of the evidence, the credibility of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his or her ability and opportunity to observe; the memory, manner and conduct of the witness while testifying; any interest, bias or prejudice the witness may have; any relationship with other witnesses or interested parties; and the reasonableness of the testimony of the witness considered in the light of all of the evidence in the case.

   You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth. You should not disregard the testimony of any witness without a reason and without careful consideration. However, if you find that the testimony of a witness is so unreasonable as to be unworthy of belief, or if you find so much conflict between the testimony of witnesses that you cannot believe all of them, then you must determine which of the witnesses you will believe and which of them you will disbelieve.

   In weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day to day living. You may find that the number of witnesses who testify to a particular fact, on one side or the other, or the quantity of evidence on a particular point does not control your determination of the truth. You should give the greatest weight to that evidence which convinces you most strongly of its truthfulness. Record at 63. In fact, the instruction reemphasizes the presumption of innocence and we fail to see any basis for the claim it requires the defendant to disprove his guilt.

be admissible as evidence in Court." Record at 114. Patton claims the condition is inappropriate because it compels him to be a witness against himself and further, the condition forces him to consent to the admissibility of evidence that otherwise is inadmissible.

A trial court has broad discretion to impose conditions of probation which will produce a law abiding citizen and protect the public. Within certain parameters, the condition may impinge upon the probationer's exercise of an otherwise constitutionally protected right. In *Owens v. Kelley* (1982), 11th Cir., 681 F.2d 1362, the Eleventh Circuit Court of Appeals discussed this issue as follows:

"A probation condition is not necessarily invalid simply because it affects a probationer's ability to exercise constitutionally protected rights." *United States v. Tonry* (5th Cir.1979), 605 F.2d 144, 150. In *Tonry* the Court adopted the following test to determine whether a probation condition imposed by a federal court pursuant to the Federal Probation Act, 18 U.S.C. § 3651, is unduly intrusive on constitutionally protected freedoms:

The conditions must be "reasonably related" to the purposes of the Act. Consideration of three factors is required to determine whether a reasonable relationship exists: (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement.

605 F.2d at 150 (quoting *United States v. Pierce*, 561 F.2d 735 (9th Cir.1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 516 (1978)).

The *Tonry* test provides an appropriate standard to judge the constitutionality of conditions of probation imposed by state courts. This standard facilitates

"an accommodation between the practical needs of the probation system and the constitutional guarantees of the Bill of Rights." *United States v. Pierce*, 561 F.2d at 739.

*Owens v. Kelley* (1982), 11th Cir., 681 F.2d 1362, 1366. With these guidelines, we consider Patton's claim the polygraph examination condition compels him to incriminate himself in violation of the fifth amendment of the United States Constitution.

Patton's fifth amendment claim is without merit. The condition on its face does not impinge upon Patton's fifth amendment rights; it does not require Patton to answer incriminating questions. If any question is asked during a polygraph examination which Patton believes requires an incriminating answer he is free to assert his fifth amendment privilege.[2]

The intrusion into the area of self-incrimination is no greater than the requirement that a probationer answer all reasonable inquiries of his probation supervisor. Therefore, we do not apply the *Tonry* test because the probation condition does not on its face impinge upon Patton's fifth amendment right.

However, we share Patton's concern about the unrestricted admissibility in evidence of the polygraph examination results. We acknowledge a probation condition requiring polygraph examinations upon request is appropriate when the condition bears a reasonable relationship to the rehabilitative aspect of probation, e.g., as a deterrence from violating other terms of probation by instilling the fear of detection or where the examination provides probation officials with an indication of the probationer's progress in rehabilitation. Nevertheless, absent stipulation or waiver, the results of a polygraph examination are inadmissible in a criminal prosecution. *Tope v. State* (1977), 266 Ind. 239, 362 N.E.2d 137, 142. The examination results are excluded because they have not been

**2.** To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.
*Hoffman v. United States* (1951), 341 U.S. 479, 486–87, 71 S.Ct. 814, 818, 95 L.Ed. 1118.

proven to be sufficiently accurate to provide a foundation for their admissibility into evidence, *Vacendak v. State* (1976), 264 Ind. 101, 340 N.E.2d 352, 357, particularly considering the probability that a jury will give them undue weight.

In theory, a defendant who makes the decision to waive or stipulate to the examination's admissibility does so after weighing the questionable accuracy of the examination against the possible benefit to be gained from the examination's admission. Here, however, that decision was made by the court, not Patton. We hold it is inappropriate for a trial court to coerce a defendant to agree to the admissibility of evidence that otherwise would be inadmissible because it has not been found scientifically reliable. Thus, the rehabilitative benefits of the polygraph examination condition must be obtained without the examination results being admissible in *any* subsequent court proceeding.

We emphasize we are limiting only the unrestricted admissibility of the polygraph examination results in *any* subsequent court proceeding, including a trial on a pending or subsequent charge. We impose no impediment upon the use of polygraph examinations as a rehabilitative tool much like the probation condition that a probationer be truthful in responding to questions asked by his or her probation supervisor.

Cause remanded to the trial court with instructions to strike the probation condition that the results of any polygraph examination provision are admissible in a subsequent court proceeding after which the judgment is affirmed.

RATLIFF, C.J., and SULLIVAN, J., concurs.