**Theodore PURDY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–9807–CR–360.**

Court of Appeals of Indiana.

March 25, 1999.

William F. Thoms, Jr., Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-defendant Theodore Purdy ("Purdy") appeals from his conviction for possession of marijuana as a Class A misdemeanor, a violation of the Indiana Uniform Controlled Substance Act. We affirm.

### Issue

Purdy raises one issue for our review which we restate as whether the search of his home was reasonable so as to satisfy the constitutional guarantees of the Fourth Amendment to the United States Constitution and Article I § 11 of the Indiana Constitution.

### Facts and Procedural History

The evidence most favorable to the judgment reveals that on February 19, 1998, Indianapolis Police Department Officer Chester Gooch ("Officer Gooch") accompanied probation officers on a regular "sweep" of probationers assigned to their supervision. Officer Gooch and the probation officers visited Purdy's residence, where he lived with his ex-wife Paula Purdy ("Paula"). Paula answered the door, and the officers requested to speak with Purdy. Paula explained that Purdy was not in the house but was in the garage working on his race car. Officer Gooch smelled what he recognized as marijuana smoke coming from inside the home and informed Paula that, as a condition of Purdy's probation, they were going to have to search the residence. Paula testified that she did not consent to the search and did not want the officers in the house. However, Officer Gooch testified that when he told Paula that they were going to have to search the residence, she said "okay."

During the search of Purdy's home, Officer Gooch told Paula that he smelled marijuana smoke coming from the bedroom. Paula then removed two plastic bags containing 7.87 grams of marijuana from a drawer under the bed in Purdy's room and handed them to Officer Gooch. Officer Gooch and the probation officers had been in the home for several minutes and had located the marijuana before Purdy came into the house through the back door. When Purdy ar-

rived, Officer Gooch advised him of the purpose of their visit and told him what they had discovered during their search. According to Officer Gooch's testimony, Purdy replied that "it's my marijuana."

Officer Gooch testified that the terms of Purdy's probation included a consent to search his person, residence or property, and Purdy does not dispute this. Another condition of Purdy's probation was that there be no marijuana or other illegal substances in his home. Although Paula and the defendant were divorced, they lived together in the same house and slept in the same bedroom. Paula was aware that her ex-husband was on probation, but she was not aware of all the conditions of his probation. At trial, Purdy suggested that the marijuana did not belong to him and that he was not aware that it was in the house. Purdy also argued that he had only claimed the marijuana as his own in order to "protect his family" because Officer Gooch threatened to arrest him and his ex-wife and take their children to a foster home. Officer Gooch acknowledged that it would have been possible to arrest both Paula and the defendant, but he insisted that he did not induce Purdy's admission by threatening to arrest Paula and take their children to a home. The trial court resolved this conflicting testimony in favor of the State. At trial, the court denied Purdy's motion to suppress the marijuana discovered during Officer Gooch's search of the defendant's home. Purdy was found guilty of possessing marijuana and this appeal ensued.

### Discussion and Decision

Purdy contends that the trial court erred in denying his motion to suppress the marijuana because the search violated his constitutional right to be free from unreasonable search and seizure guaranteed under the Fourth Amendment to the United States Constitution and Article I § 11 of the Indiana Constitution. We disagree.

■ The Fourth Amendment to the United States Constitution provides that the federal government shall not violate "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,...." *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652, 115 S.Ct. 2386, 2390, 132 L.Ed.2d 564, 573 (1995). The Fourteenth Amendment extends this constitutional guarantee to searches and seizures by state officers. *Id.* Generally, law enforcement officials should conduct searches pursuant to a warrant supported by probable cause. *United States v. Lewis*, 71 F.3d 358, 361 (10th Cir.1995). However, the Supreme Court has recognized exceptions to the warrant requirement when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709, 717 (1987), *quoting New Jersey v. T.L.O.*, 469 U.S. 325, 351, 105 S.Ct. 733, 748, 83 L.Ed.2d 720, 741 (1985).

■ The State's operation of the probation system presents a special needs situation beyond the normal need for law enforcement that justifies such a departure from the usual warrant and probable cause requirements. *Griffin*, 483 U.S. at 873, 107 S.Ct. at 3168, 97 L.Ed.2d at 717. The imposition of probation, like incarceration, is a criminal sanction. *Id.* Probation is a conditional liberty dependent upon the observance of certain restrictions. *Rivera v. State*, 667 N.E.2d 764, 766 (Ind.Ct. App.1996), *trans. denied* (1996). As such, probationers simply do not enjoy the freedoms to which ordinary citizens are entitled. *Id.* Certain restrictions on a probationer's behavior are designed to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by a probationer being at large. *Griffin*, 483 U.S. at 875, 107 S.Ct. at 3169, 97 L.Ed.2d at 718. These goals require and justify the exercise of supervision to ensure that the restrictions are in fact observed by the probationers. *Id.* We have held that a trial court has broad discretion to impose conditions of probation that will aid in the furtherance of these goals. *Patton v. State*, 580 N.E.2d 693, 698 (Ind.Ct.App.1991), *trans. denied* (1992). These conditions may impinge upon the probationer's exercise of an otherwise constitutionally protected right. *Id.*

However, it must be remembered that probationers are entitled to some limited protection of their privacy interest. *Griffin*, 483 U.S. at 875, 107 S.Ct. at 3170, 97 L.Ed.2d at 718. A probationer's home is protected by the Fourth Amendment requirement that searches at least be reasonable. *Griffin*, 483 U.S. at 873, 107 S.Ct. at 3168, 97 L.Ed.2d at 717; *Rivera*, 667 N.E.2d at 766. Similarly, the focus of our state constitutional analysis is on the reasonableness of the official behavior in conducting a warrantless search. *Rivera*, 667 N.E.2d at 767. In deciding *Rivera*, this Court sought guidance from the federal courts. In order to adequately protect a probationer's privacy interest, a probation agreement requiring the probationer to submit to searches should contain narrowly tailored restrictions. *Id.; United States v. Wryn*, 952 F.2d 1122, 1124 (9th Cir.1991); *United States v. Giannetta*, 909 F.2d 571, 575 (1st Cir.1990); *United States v. Schoenrock*, 868 F.2d 289, 292–93 (8th Cir.1989). Moreover, Judge Staton's concurring opinion in *Rivera* noted that a condition of probation requiring the probationer to submit to a search without reasonable suspicion is overly broad and in conflict with the dictates of the Supreme Court's decision in *Griffin*. *Rivera*, 667 N.E.2d at 767–768. We agree with this analysis and affirm the importance of a reasonableness limitation on a probationer's consent to waive his Fourth Amendment rights in a probation agreement. The determination of the validity of a consent to search is a factual matter for the trial court that will not be set aside unless it is clearly erroneous. *Id.*

While conditions of probation may impinge upon the probationer's exercise of a constitutionally protected right, those impingements must be designed to accomplish the explicit goals of protecting the community and promoting the probationer's rehabilitation process. The State must be able to demonstrate that the warrantless search of a probationer was a true probation search and not an investigation search. *United States v. Ooley*, 116 F.3d 370, 372 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 2391, 141 L.Ed.2d 756 (1998). In contrast to an investigation search, a probation search should advance the goals of probation that allow the probationer to " 'demonstrate his rehabilitation while serving a part of his sentence outside the prison walls.' " *Id.; quoting Latta v. Fitzharris*, 521 F.2d 246, 249 (9th Cir. 1975). A probation search cannot be a mere subterfuge enabling the police to avoid obtaining a search warrant. *Ooley*, 116 F.3d at 372.

In *Patton*, we adopted a federal test to determine whether a probation condition imposed by a court was unduly intrusive of constitutionally protected freedoms. *Id.* at 698. That test required the conditions of probation to be reasonably related to the purposes of the Federal Probation Act. *Id.* The federal model is an appropriate standard to judge the constitutionality of probation conditions imposed by state courts. *Id.* Consideration of three factors is required to determine whether a reasonable relationship exists between the conditions of probation and the goals of the probation system. *Id.* Trial courts must examine "(1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement." *Id., quoting United States v. Tonry*, 605 F.2d 144, 150 (5th Cir. 1979). The *Tonry* test facilitates " 'an accommodation between the practical needs of the probation system and the constitutional guarantees of the Bill of Rights.' " *Patton*, 580 N.E.2d at 698, *quoting United States v. Pierce*, 561 F.2d 735, 739 (9th Cir.1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 516 (1978).

### I. Validity of the Probation Agreement

In the case before us, Purdy's probation agreement was never entered into evidence. Officer Gooch testified that his understanding of Purdy's probation agreement was that law enforcement officers "have the right to enter his residence while he was on probation to search." An appellant bears the burden of presenting this Court "with a record complete enough to sustain his argument." *McGuire v. State*, 617 N.E.2d 548, 550 (Ind.Ct.App.1993). If an appellant fails to furnish any evidence in the

record to support a claim of error, this Court may properly consider that issue waived. *Wilson v. State,* 679 N.E.2d 1333, 1335 (Ind. Ct.App.1997). There is insufficient evidence for this Court to determine whether Purdy consented to a search condition in his probation agreement that was unreasonable or overly broad on its face. Consequently, the trial court's determination is not clearly erroneous and will not be set aside.

## II. Validity of the Search

■ Although we are unable to determine whether Purdy's probation agreement was invalid, there is sufficient evidence to determine whether the decision to search Purdy's home was in fact properly made on the basis of reasonable suspicion. *Giannetta,* 909 F.2d at 576. The threshold question is whether the facts and circumstances of the search made it unreasonable within the meaning of the Fourth Amendment. *Id.* In determining whether a particular search is reasonable, the promotion of legitimate governmental interests must be balanced against the individual's Fourth Amendment interests. *Vernonia School Dist.,* 515 U.S. at 653, 115 S.Ct. at 2390, 132 L.Ed.2d at 574.

■ Officer Gooch arrived at Purdy's residence with probation officers on a routine sweep of their probationers. It is perfectly reasonable for probation officers to supervise and monitor the actions of probationers to ensure that they are observing the restrictions and conditions of their probation. In fact, IND. CODE § 35–38–2–2.3(a)(10) provides. that a court may require a probationer to permit his probation officer "to visit the person at reasonable times at the person's home or elsewhere" as a condition of probation. Moreover, the probation system's overall goals of genuine rehabilitation and community protection could not be accomplished without supervision and monitoring by the officers. One of Purdy's probation conditions required him to submit to a search of his person, property or residence. He certainly should have expected that his probation officer might stop by for a surprise visit to make sure that no illegal activity was occurring and to enforce the conditions of his probation. So long as the supervisory function of proba-

tion officers conducting a regular sweep of probationers does not include the automatic search of their person, vehicle, or residence without reasonable suspicion, a consent-to-search provision in a probation agreement is valid.

There is no evidence in the record to indicate that the officers intended to search Purdy's home until after they arrived and smelled marijuana smoke coming from inside the home. This inference is supported by the fact that Officer Gooch told Purdy's ex-wife that they wanted to speak with him when she answered the door. There was no mention of searching the home until Officer Gooch smelled what he believed to be marijuana smoke. After smelling the marijuana, Officer Gooch informed Paula that they would have to search the premises. The officer's decision to search was narrowly and properly made on the basis of a reasonable suspicion that illegal activity was occurring in Purdy's home in violation of his probation. The actual search of Purdy's home was not unreasonable and did not violate his constitutional rights. Therefore, the trial court's denial of Purdy's motion to suppress the marijuana obtained during the search of his home is not clearly erroneous.

### Conclusion

For the foregoing reasons, the trial court's denial of Purdy's motion to suppress is affirmed.

Affirmed.

STATON and RILEY, JJ., concur.