**Donald G. CARSWELL, Appellant– Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 52A02–9901–CR–69.

Court of Appeals of Indiana.

Dec. 27, 1999.

Susan K. Carpenter, Public Defender of
Indiana, Lorraine L. Rodts, Deputy Public

Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Michael R. McLaughlin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

SHARPNACK, Chief Judge

Donald Carswell appeals his sentence for two counts of child molesting, class C felonies.[1] Carswell raises five issues, which we restate as:

1) whether the trial court erroneously required him to pay for any counseling expenses the victims may incur related to the molest as a condition of his probation;

2) whether the trial court erroneously forbade him from residing within two blocks of a school, playground or any area where children congregate as a condition of his probation;

3) whether the trial court erroneously required him to submit to warrantless searches of his person and property by his probation officer as a condition of his probation;

4) whether the trial court erroneously required him to submit to alcohol/drug detection tests as a condition of his probation; and

5) whether the trial court erroneously imposed upon him two different polygraph provisions.

We affirm in part, reverse in part, and remand.

The facts most favorable to the judgment follow. On June 17, 1998, Carswell was charged with two counts of child molesting. Carswell pled guilty, pursuant to a plea agreement, on November 6, 1998. The trial court sentenced Carswell to four years in prison on both counts with said sentences to run concurrently. The trial court then suspended three years of the sentence and placed Carswell on probation for three years. Among other things, the trial court ordered Carswell, as conditions of his probation, to pay for any counseling expenses his victims may incur related to the molestation; not to reside within two blocks of a school, playground, or any area where children congregate; to undergo psychophysiological polygraph testing for treatment purposes; to submit to warrantless searches of his person and property by his probation officer as a condition of his probation; and to submit to lie detector tests and alcohol/drug detection tests.

■ Probation is a criminal sanction wherein a convicted defendant specifically agrees to accept conditions upon his behavior in lieu of imprisonment. *Rivera v. State,* 667 N.E.2d 764, 766 (Ind.Ct.App. 1996), *trans. denied.* Thus, probation is a conditional liberty dependent upon the observance of certain restrictions. *Id.* These restrictions are designed to ensure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by a probationer being at large. *Id.* When granting probation, the trial court is vested with broad discretion in establishing conditions. *Gordy v. State,* 674 N.E.2d 190, 191 (Ind.Ct.App.1996). The only limitation placed on this discretion is that the conditions have a reasonable relationship to the treatment of the accused and the protection of the public. *Id.* at 191–192. Therefore, due to the broad discretion granted the trial court, our review is essentially limited to determining whether the conditions placed upon the defendant are reasonably related to attaining these goals. *Id.* at 192. However, where a defendant contends that a probation condition is unduly intrusive on a constitutional right, the following three factors must be balanced: (1) the purpose sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law abiding citizens should be afforded to probationers; and (3) the legitimate needs of law enforcement. *Id.* at n. 3; *Johnson v. State,* 659 N.E.2d 194, 199 (Ind.Ct.App.1995), *reh'g denied.*

---

1. Ind.Code § 35–42–4–3(b).

## I.

Carswell first contends that the condition of probation requiring him to "[p]ay for any counseling expenses his victims may incur related to the molestation" is erroneous because it is not limited to the actual loss incurred by the victims and therefore exceeds statutory authority. Record, p. 156. Under Indiana law, a trial court has the authority to order a defendant convicted of a crime to make restitution to the victims. *See* Ind.Code §§ 35–38–2–2.3; 35–50–5–3. The purpose behind an order of restitution is to impress upon the criminal defendant the magnitude of the loss he has caused and to defray costs to the victim caused by the offense. *Wilson v. State*, 688 N.E.2d 1293, 1295–1296 (Ind.Ct.App.1997). However, the trial court may consider only those expenses incurred by the victim prior to the date of sentencing in formulating its restitution order. *Kotsopoulos v. State*, 654 N.E.2d 44, 46 (Ind.Ct.App.1995), *reh'g denied, trans. denied.*

Here, the victims were not in counseling at the date of the sentencing, nor had they ever been. Therefore, the victims had incurred no expenses in relation to the molest at the date of Carswell's sentencing. Thus, the trial court's order requiring Carswell to "[p]ay for any counseling expenses his victims *may* incur related to the molestation" is based upon a future expense that may or may not actually be incurred. Record, p. 156 (emphasis added). Therefore, it was erroneous. *See Kotsopoulos*, 654 N.E.2d at 44; *cf. Roach v. State*, 695 N.E.2d 934, 943–944 (Ind. 1998), *rev'd on other grounds*, 711 N.E.2d 1237 (restitution order requiring defendant convicted of murder to pay for the victim's burial monument, which had not yet been purchased, was properly part of the funeral and burial expenses authorized by the restitution statute because the monument was not some nebulous future expense that might not actually be incurred). Accordingly, the portion of Carswell's probation requiring him to pay for any counseling expenses his victims may incur is reversed. *See id.*

## II.

Carswell next contends that the trial court erroneously forbade him from residing within two blocks of a school, playground or any area where children congregate as a condition of his probation. Carswell argues that this restriction is "neither minimally necessary nor reasonably related to the State's interests in rehabilitation and public safety." Appellant's Brief, pp. 25–26. According to Carswell, other safety restrictions in place, such as that he not have contact with a child under the age of eighteen unless a parent is present and that he not commit another criminal offense, adequately protect the public, and therefore, the residency requirement is an "exaggerated response" to the State's concerns. Appellant's Brief, p. 22.

Child molesters molest children to whom they have access. Carswell, so far as the record shows, used his relationship to the victims as a way to gain access to them. Conditions of probation that reduce the potential for access to children are reasonable. *See, e.g., Gordy v. State*, 674 N.E.2d 190, 191 (Ind.Ct.App.1996). Preventing Carswell from residing within two blocks of places were children are known to congregate, such as schools, playgrounds, and the YMCA near his former residence, will not eliminate Carswell's potential access to children, but will certainly reduce such access. This type of condition is a protective measure for children who go to such places and it will assist Carswell in his rehabilitation.

Our conclusion that the restriction is reasonable is supported, as a matter of policy, by the amendment to Ind.Code § 35–38–2–2.3 which became effective July 1, 1999. That amendment makes mandatory, as a condition of probation for a sex offender, that the court "prohibit the offender from residing within one thousand (1,000) feet of school property ... for the period of probation." I.C. § 35–38–2–2.3. Clearly, by enacting this statute, the legislature has recognized the value of restricting child molester's access to children,

thereby reducing the opportunity for convicted molesters to continue offending.

■ Carswell further argues that the condition as written is void for vagueness because it fails to provide any ascertainable standard of guilt. Specifically, Carswell contends that the phrase "area where children congregate" results in a "total absence of any predictable standard for identifying in advance the places near which [he] is forbidden to locate." [2] Appellant's Brief, p. 14. We agree that this portion of the condition is too vague. *See, e.g., Dulin v. State,* 169 Ind.App. 211, 223, 346 N.E.2d 746, 753 (Ind.Ct.App.1976) (holding that condition of probation that required the defendant, in essence, to maintain good behavior was unreasonably vague). Children congregate where they want to, in many cases. Carswell's place of residence should not be subject to the whim of where local children might choose to gather. The condition should be more precise and cover specific places such as schoolyards, playgrounds and the like where children can be expected to congregate as a usual thing. Therefore, we remand to the trial court for reconsideration of this condition in the light of our discussion.

### III.

Carswell next argues that the imposition of a requirement that he submit to warrantless searches of his person and his property as a condition of his probation constitutes an unreasonable invasion of his Fourth Amendment Rights.[3] The challenged provision is as follows: "You will permit the probation officer, in conjunction with other law officers, to enter your residence and make reasonable inquiry into your activities and you will submit to a search of your person and/or property by such officers, without a warrant." Record, p. 158.

■ The State's operation of the probation system presents a special situation beyond the normal need for law enforcement that justifies a departure from the usual warrant and probable cause requirements imposed by the Fourth Amendment. *Rivera v. State,* 667 N.E.2d 764, 766 (Ind.Ct.App.1996), *trans. denied.* Because conditions of probation may impinge upon the probationer's exercise of an otherwise constitutionally protected right, a search of a probationer or his home may be conducted absent probable cause. *Purdy v. State,* 708 N.E.2d 20, 22–23 (Ind.Ct. App.1999); *see also Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). Nonetheless, such searches must still be "reasonable" in order to protect probationer's limited privacy interests. *See id.*

In determining the validity of the search condition here, we must first inquire whether the condition as written is so broad as to be facially invalid. *See Purdy,* 708 N.E.2d at 23. If we determine that the condition is not facially invalid, we must then determine whether the imposition of the search condition is reasonably related to Carswell's rehabilitation and the protection of the public. *See Gordy v. State,* 674 N.E.2d 190, 191 (Ind.Ct.App. 1996). Turning to the issue of whether the condition as written is so broad as to be facially invalid, we note that we addressed the propriety of a similar, but more expansive, condition regarding searches in *Rivera,* 667 N.E.2d 764. In *Rivera,* a defendant convicted of possession of illegal

---

**2.** Carswell also attempts to argue that the phrase "not reside" within this condition further compounds the uncertainty of the condition because it "fails to draw any clear lines between the kind of conduct on his part which will subject him to criminal sanctions and that which will not." Appellant's Brief, p. 15. Because the term "reside" plainly means to "[l]ive, dwell, abide, sojourn, stay, remain, [or] lodge," we find this contention frivolous and do not address it further. BLACKS LAW DICTIONARY 1308 (6th ed.1990).

**3.** The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that the government shall not violate "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,...." U.S. CONST. amend. IV.

drugs was sentenced to prison to be followed by probation. *Id.* at 765. As one of the conditions of his probation, the defendant was required to "waive [his] Fourth Amendment Rights as to search and seizure." *Id.* Thereafter, the probation officer received information that the defendant was suspected of having cocaine at his home. *Id.* at 767. Additionally, the defendant tested positive for cocaine during a urine screen prior to the search. *Id.* Noting that "[a] probationer's home . . . is protected by the Fourth Amendment's requirement that the searches be reasonable," we held that under the circumstances, the search of the defendant's home was reasonable. *Id.* at 766–767. Judge Staton concurred in the opinion, but wrote separately to emphasize his view that "reasonableness" should be established by narrowly tailored restrictions included within the probation agreement. *Id.* at 767. Although Judge Staton thought that the probation order was overly broad because it included an all-encompassing waiver of the defendant's Fourth Amendment rights, he concurred because "the absence of a reasonableness limitation is not objectionable so long as the decision to search was in fact narrowly and properly made on the basis of reasonable suspicion." *Id.* at 768 (Staton, J., concurring).

Following *Rivera*, the next Indiana case to discuss probation conditions relating to searches was *Purdy*, 708 N.E.2d 20. In *Purdy*, a defendant consented to a probation condition that in effect required him to consent to a search of his residence by his probation officer. *Id.* at 21. While standing on the defendant's front porch during a regular visit of probationers assigned to his supervision, the probation officer smelled marijuana coming from inside the defendant's home. *Id.* A subsequent search of defendant's home uncovered two plastic bags containing marijuana. *Id.* When addressing the defendant's claim that evidence of the marijuana should have been suppressed at the subsequent trial because the search was in violation of his constitutional rights, the *Purdy* court affirmatively adopted Judge Staton's concurring opinion in *Rivera* and "affirm[ed] the importance of a reasonableness limitation on a probationer's consent to waive his Fourth Amendment rights in a probation agreement." *Id.* at 23. However, the court did not address the validity of the search condition in the probation agreement because the defendant waived the issue by not introducing the probation agreement into evidence. *Id.* at 23–24. Nonetheless, the court ultimately held that the search was valid because it was properly made on the basis of reasonable suspicion.

*Purdy*, at first glance, seems to stand for the proposition that a search condition in a probation agreement that does not contain language which limits such searches to those that are reasonable is overbroad and thus invalid. However, *Purdy* did not address the validity of the probation agreement and decided the case on other grounds. Thus, the commentary in *Purdy* regarding the language of search conditions is dictum.[4]

4. Moreover, the absence of reasonableness language in a probation condition that requires the defendant to submit to searches without a warrant does not necessarily conflict with the dictates of the Supreme Court's decision in *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), as claimed in *Purdy*. In *Griffin*, the Supreme Court upheld a warrantless search of a probationer's home because it was carried out pursuant to a valid state regulation that satisfied the Fourth Amendment's reasonableness requirement. *Id.* at 872, 107 S.Ct. at 3168. That regulation required that all searches of probationers be conducted with the approval of the probation officer's supervisor and only upon the presence of "reasonable grounds" to believe that the probationer possessed contraband. *Id.* at 871, 107 S.Ct. at 3167. Thus, *Griffin* stands for the proposition that reasonableness for probationary searches may be established by statute rather than by warrant. Although Indiana does not have any such regulation establishing reasonableness for searches with regards to probationers, that does not necessarily lead to the conclusion that the condition in the instant case is invalid. Because the Court in *Griffin* was able to uphold the search based on a state regulation,

Thus, assuming arguendo that the search condition in the present case was devoid of any reasonableness language, the question becomes whether the absence of such language renders the condition overbroad on its face, and thus in derogation of Carswell's Fourth Amendment rights.[5] First, we note that the instant search condition is more narrowly drawn than the search condition in *Rivera* which required the probationer to "waive his Fourth Amendment right to search and seizure." *Rivera*, 667 N.E.2d at 765. Although the probationer in *Rivera* did not explicitly argue that the absence of a reasonableness limitation in his probation condition regarding warrantless searches rendered the probation order overly broad, the majority merely noted, in the face of Judge Staton's concurring opinion that the condition was overbroad, that "[a] probationer's home ... is protected by the Fourth Amendment's requirements that searches be reasonable." *Id.* at 766. Implicit in *Rivera*, therefore, is the notion that such conditions are valid even if the "reasonableness" limitation is not expressly included within the probation agreement.

▇▇▇▇ We also look to our statutes relating to parolees for further guidance on this issue because "a person on probation occupies a status similar to that of a person on parole." *State v. Fortunato*, 50 A.D.2d 38, 41–42, 376 N.Y.S.2d 723 (N.Y.App.Div.1975). In fact, the only practical difference between the two is that " '[p]robation' relates to judicial action taken before the prison door is closed, whereas 'parole' relates to executive action taken after the door has closed on a convict." BLACK'S LAW DICTIONARY 1116 (6th

ed.1990). Indiana Code § 11–13–3–7(a)(6) provides that an "employee of the department assigned to supervise and assist parolees may ... search a parolee's person or property if he has *reasonable cause* to believe that the parolee is violating or is in imminent danger of violating a condition to remaining on parole." Ind.Code § 11–13–3–7(a)(6) (emphasis added). Therefore, a search which is not related to the parolee's conviction or rehabilitation, but is instead only intimidating and harassing, is not sanctioned. Likewise, we have expressed this same view with regard to probationers. *See Dulin v. State*, 169 Ind.App. 211, 222, 346 N.E.2d 746, 753 (Ind.Ct.App.1976) (stating that "[w]e do not here relegate probationers to secondclass citizenship, nor sanction abusive police/probation officer conduct. This opinion is not an invitation to ... conduct constant, meddling surveillance which unreasonably interferes with a probationer's privacy"). Accordingly, though not explicitly contained in the probation statute, we think that a limitation that all searches of probationers be conducted only upon reasonable cause is inherent in such conditions, even if not explicitly stated. *See Rivera*, 667 N.E.2d at 766–767; *Dulin*, 169 Ind.App. at 222, 346 N.E.2d at 753; *see, e.g., People v. Mason*, 5 Cal.3d 759, 97 Cal.Rptr. 302, 488 P.2d 630, 633 n. 3 (1971), *cert. denied*, 405 U.S. 1016, 92 S.Ct. 1289, 31 L.Ed.2d 478 (holding that while probationer may be required to submit to warrantless searches, he also maintains the right to object to the unreasonable manner in which that condition is carried out); *People v. Eiland*, 217 Ill. App.3d 250, 160 Ill.Dec. 231, 576 N.E.2d 1185, 1191 (1991), *appeal denied*, 142 Ill.2d

it found it unnecessary to hold, as the Wisconsin supreme court did, that any search of a probationer's home by a probation officer satisfies the Fourth Amendment so long as the information possessed by the officer satisfies a federal "reasonable grounds" standard. *Id.* at 872, 107 S.Ct. at 3168.

**5.** Arguably, the instant condition does contain a reasonableness limitation. The probation agreement states that the probation officer is allowed to make a *reasonable* inquiry into

Carswell's activities. Record, p. 158. Immediately following this, within the same sentence, is the language requiring Carswell to submit to warrantless searches. Therefore, although the term "reasonable" is not placed immediately before the term "search," a rational construction of the condition would permit the inference that the term reasonable referred both to the probation officer's inquiries into Carswell's activities, as well as the warrantless searches.

658, 164 Ill.Dec. 921, 584 N.E.2d 133 (holding that probationer's waiver of Fourth Amendment rights extends only to searches conducted under a reasonableness standard); *State v. Mitchell,* 22 N.C.App. 663, 207 S.E.2d 263, 264–265 (1974) (holding that probation condition that required defendant to consent to warrantless searches was valid but that defendant's consent to such condition did not result in a simultaneous waiver of his right to insist that the search be conducted in an otherwise lawful manner); *Anderson v. Commonwealth,* 256 Va. 580, 507 S.E.2d 339, 342 (1998) (holding that probation condition which required defendant to waive his Fourth Amendment rights was not overbroad). Although the better practice may be for the trial judge to include within the probation condition itself the limitation that such searches be reasonable, we find no error in the failure to include such language, especially in light of the fact that "the absence of a reasonableness limitation is not objectionable so long as the decision to search was in fact narrowly and properly made on the basis of reasonable suspicion." *Rivera,* 667 N.E.2d at 768 (Staton, J., concurring); *see also United States v. Consuelo–Gonzalez,* 521 F.2d 259, 263 (9th Cir.1975) (recommending the following probation condition in order to provide unambiguous guidance to both the probationer and the probation officer in conducting searches: "[t]hat she submit to search of her person or property conducted in a reasonable manner at a reasonable time").

Having concluded that the search condition in the instant case is not facially invalid, we next turn to the issue of whether the imposition of this condition is reasonably related to Carswell's rehabilitation and the protection of the public. *See Gordy,* 674 N.E.2d at 191. Carswell argues that there is no evidence that his rehabilitation would be furthered, or that public safety would be enhanced, by a condition that he submit to warrantless searches. Because his conviction for child molesting did not involve the use of an instrumentality or contraband and because he has no criminal history of concealment, Carswell contends that the trial court could not reasonably have inferred from the nature of his crime that a search of his person or home would uncover evidence of criminal activity or child molests that could not be uncovered independently by less intrusive means, such as a report from the victim.

As for the rehabilitation aspects of this condition, it cannot be disputed that a warrantless search condition is an extremely valuable aid in rehabilitation because if the probationer knows that he can be searched at any time without warning, he is less likely to engage in criminal activity. Carswell does not contest the validity of the condition of his probation agreement that requires him to permit his probation officer to enter his residence and make reasonable inquiries into his activities. Therefore, the notion that the probation officer, while legitimately in Carswell's home, may not conduct a search when he is presented with evidence that would reasonably lead him to believe that Carswell was violating some condition of his probation, seems a bit obtuse. Moreover, because such searches may only be conducted upon reasonable suspicion, Carswell is protected from the "[i]ndiscriminate invasions of privacy" that he is concerned with. Appellant's Brief, p. 38.

As for the protection of the public aspect, we know that the crime of child molestation all too often goes unreported because the resulting fear and embarrassment inherent in this type of crime makes it difficult for sexually abused children to speak out against their attacker. *See Lannan v. State,* 600 N.E.2d 1334, 1336 (Ind. 1992) (quoting *State v. Friedrich,* 135 Wis.2d 1, 398 N.W.2d 763, 766 (1987)). Moreover, we know that the rate of recidivism among sexual deviates is high. *Id.* at 1336–1337, 1337 n. 6. Therefore, we cannot countenance Carswell's suggestion that allowing warrantless searches, based upon reasonable suspicion, of a convicted child molester does nothing to promote public safety and that waiting for a report from

Carswell's next child victim, if any, is a legitimate alternative to such searches.

■ Accordingly, while the need for such searches may not be as readily apparent in the instant case as in, for example, cases involving narcotic offenses, we conclude that the search condition in the present case has a reasonable relationship to Carswell's treatment and the protection of the public. Therefore, we hold that the trial court did not abuse its discretion in imposing as a condition of Carswell's probation that he submit to warrantless searches.[6] *See Gordy,* 674 N.E.2d at 191–192.

### IV.

Carswell next contends that the trial court erroneously required him to submit to the following as a condition of his probation:

> "You shall not use or possess any illegal drugs or controlled substances. You shall submit to a lie detection test, alcohol/drug detection test equipment, as requested by your probation officer, to determine personal drug and/or alcohol use and your knowledge of drug trafficking. Further, you will submit to a blood, urine or hair analysis as requested by your probation officer to determine the presence of alcohol, drugs or controlled substances in your system. Positive results in any of the above tests may be used against you in a court proceeding and will constitute a violation of your probation. Where there is a cost involved for any of the above testing, you will be responsible for and obligated to pay the cost of such testing and you will not tamper with or attempt to alter any of the tests."

Record, p. 159.

Pursuant to I.C. § 35–38–2–2.3, the trial court may require, as a condition of probation, that the probationer undergo a laboratory chemical test or a series of chemical tests to detect and confirm the presence of a controlled substance. I.C. § 35–38–2–2.3(19).

Carswell does not dispute the power of the trial court to impose such a condition as a condition of probation. However, Carswell argues that because there is no evidence to indicate that he is a drug or alcohol abuser or that alcohol or drugs played any part in his crime, the instant condition is unreasonable, arbitrary, and does not further any legitimate rehabilitative goal.

■ "Narcotic abuse is a pervasive and damaging force in our society, and presents a unique legal problem due to its psychological and physiological ramifications." *Ewing v. State,* 160 Ind.App. 138, 147, 310 N.E.2d 571, 577 (1974), *overruled in part on other grounds by Hoffa v. State,* 267 Ind. 133, 135, 368 N.E.2d 250, 252 (1977). Moreover, the possession of narcotics and other drugs is illegal. Therefore, because the condition that Carswell "not commit any acts which would be a crime" was validly imposed, we hold that the portion of the condition in question which relates to drugs and controlled substances is valid.[7] *See Williams v. State,*

---

**6.** Carswell also asserts that the requirement that he submit to warrantless searches is a "standard" condition in probation agreements and therefore, the trial court did not exercise its discretion but "instead imposed the condition indiscriminately, without considering ... Carswell's character or circumstances, and whether such a requirement would genuinely promote his rehabilitation or protect the public." Appellant's Brief, p. 36. Because we find that said condition does promote Carswell's rehabilitation as well as protect the public, we need not address this contention.

**7.** To avoid confusion, we clarify that the prohibition against using or possessing any illegal drugs or controlled substances is valid, as is the requirement that Carswell submit to lie detection tests and drug detection tests (including blood, urine, and hair analysis) to determine personal drug use and knowledge of drug trafficking. *See e.g., Patton v. State,* 580 N.E.2d 693, 698 (Ind.Ct.App.1991), *trans. denied,* (acknowledging that "a probation condition requiring polygraph examinations upon request is appropriate when the condition bears a reasonable relationship to the rehabilitative aspect of probation, e.g., as a deterrence from violating other terms of probation ...").

695 N.E.2d 1017, 1019 (Ind.Ct.App.1998) (stating that "[t]he requirement that a probationer obey federal, state and local laws is automatically a condition of probation by operation of law").

Regarding the portion of the condition in question which relates to alcohol use, the State cites *Malone v. State*, 571 N.E.2d 329 (Ind.Ct.App.1991), in support of its position that ordering Carswell to abstain from alcohol consumption is reasonably related to the protection of the public. While the nature of the defendant's crimes was not revealed in the *Malone* decision, the court therein stated that "an order of abstention from the use of alcohol is not penal or punitive but is a condition reasonably related to the probationer's rehabilitation."[8] *Id.* at 331. However, the *Malone* court was addressing the defendant's contention that said condition was not enforceable because it was not included in the plea agreement itself. *Id.* at 330–331. The question in the present case, namely whether the requirement that the defendant submit to polygraph examinations and alcohol testing to determine his alcohol use is reasonably related to his rehabilitation or public safety, was not at issue in *Malone*.

Here, there is nothing in the record which suggests any relationship between Carswell's behavior and the use of alcohol. However, we are not prepared to hold that it is an abuse of discretion to require abstention from the use of alcohol as a condition for probation of a child molester. The propensity of alcohol to impair judgment and reduce inhibition is known. The need to protect children and to assist the defendant in his rehabilitation makes the condition a reasonable one. *See, e.g., Allain v. State*, 810 P.2d 1019, 1022 (Alaska Ct.App. 1991) (holding that defendant convicted of sexual abuse of a minor could properly be required to abstain from consuming alcoholic beverages as a condition of probation even though it did not appear that the

defendant drank excessively and there was no direct link between the defendant's drinking and the offense because of the possibility that the defendant might develop an incipient problem with alcohol which would destroy the possibility of the defendant successfully addressing his problems where the defendant was a mildly retarded man who had problems controlling his impulsive behavior); *cf., Biller v. State*, 618 So.2d 734, 734–735 (Fla.1993) (holding that condition in probation agreement which prohibited defendant convicted of carrying a concealed weapon from using or possessing alcohol was improper because there was no evidence to connect the use of alcohol with the crime he was convicted of or that he had a propensity towards alcohol). Accordingly, the portion of the condition in question which relates to alcohol use is upheld. *See, e.g., Allain*, 810 P.2d at 1022.

### V.

Next, Carswell contends that the trial court erroneously required him to submit to polygraph examinations as a condition of his probation without expressly prohibiting any evidentiary use of the examinations or their results. Carswell's probation agreement subjects him to two different polygraph provisions. The first, discussed previously in Section IV, provides that Carswell "shall submit to a lie detection test . . . as requested by [his] probation officer, to determine personal drug and/or alcohol use and [his] knowledge of drug trafficking." Record, p. 159. The condition goes on to provide that "[p]ositive results . . . may be used against [him] in a court proceeding and will constitute a violation of [his] probation." Record, p. 159. Although a condition requiring Carswell to submit to a polygraph examination is appropriate, a trial court cannot "coerce a defendant to agree to the admissibility of evidence that otherwise would be inadmissible because it has not been found to be scientifically reliable."

---

**8.** The opinion merely states that "Malone pled guilty to several felony counts in a negotiated

plea agreement." *Malone*, 571 N.E.2d at 330.

*Patton v. State,* 580 N.E.2d 693, 699 (Ind. Ct.App.1991), *trans. denied.* Therefore, the results of the polygraph examination are not admissible in a subsequent court proceeding and this portion of the condition is stricken. *See id.* However, we note that said results are admissible in a probation revocation proceeding because a probation revocation hearing is not an adversarial criminal proceeding, but a civil matter which requires more flexible procedures. *See, e.g., Cox v. State,* 706 N.E.2d 547, 551 (Ind.1999), *reh'g denied* (holding that judges may consider any relevant evidence bearing some substantial indicia of reliability, including reliable hearsay, in a probation revocation hearing).

■■■■■■ The second probation condition which requires Carswell to submit to polygraph testing provides that Carswell "[s]hall undergo psychophysiological polygraph testing for treatment purposes only and shall be immune from any further prosecution." [9] Record, p. 157. According to Carswell, "[i]mmunity from prosecution for any additional child molesting acts which may be revealed during the examination does not protect [him] from ... other serious collateral consequences ... [such as] use of the examination and results for Ind. Evidence Rule 404(b) or impeachment purposes, and as evidence of aggravation supporting an enhancement of punishment at some future sentencing." [10] Appellant's Brief, p. 43. However, absent stipulation or waiver, results of polygraph tests are inadmissible at trial. *Patton,* 580 N.E.2d at 698. Moreover, it is erroneous for the trial court to admit facts which indicate that a witness has taken a polygraph test. *Brown v. State,* 587 N.E.2d 111, 113 (Ind.1992). Therefore, Carswell's

concerns that the results of the polygraph tests may be. used for impeachment purposes or to prove motive, intent, preparation etc., pursuant to Ind. Evidence Rule 404(b), are unfounded.

■■■■■ However, the strict evidentiary rules which apply at trial do not govern sentencing. *Allen v. State,* 406 N.E.2d 976, 980 (Ind.Ct.App.1980), *modified on other grounds on reh'g,* 408 N.E.2d 122. Therefore, the issue of whether the polygraph results may be admissible in a subsequent sentencing hearing is less clear. Undoubtedly, such results are inadmissible to the extent that they go to the issue of Carswell's guilt or innocence of the crime charged. *Id.* at 981; *Maddix v. State,* 250 Ind. 261, 267, 235 N.E.2d 475, 478 (1968). However, the *Allen* court specifically declined to decide whether or not there may be circumstances in which polygraph results would be admissible at sentencing, such as when said test reflects upon the defendant's attitude, background, character, or other criteria which may properly be considered in sentencing. *Allen,* 406 N.E.2d at 981; *see also, Burch v. State,* 487 N.E.2d 176, 179 (Ind.Ct.App.1985), *reh'g denied, trans. denied.* Nonetheless, we hold that the polygraph probation conditions are valid. *See Patton,* 580 N.E.2d at 699 (emphasizing that there is "no impediment upon the use of polygraph examinations as a rehabilitative tool"). Though not stated as such, Carswell's claim that the absence of a prohibition on all evidentiary uses of the polygraph examinations and their results puts him under "a realistic threat of incrimination in future proceedings" is actually a claim that such condition impinges upon his Fifth Amendment right against self-incrimination.[11]

---

9. The purpose behind this condition is to help ensure that offenders fully reveal their sexual histories, information that is essential to the development of effective treatment programs. "The goal of polygraph examination is to obtain information necessary for risk management and treatment, and to reduce the sex offender's denial mechanisms." Record, p. 161.

10. Ind. Evidence Rule 404(b) provides:

"Evidence of other crimes, wrongs, or acts is not admissible prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...."

11. The Fifth Amendment provides that no person shall be "compelled in any criminal

Appellant's Brief, p. 43. However, we have already determined that a condition of probation that requires the defendant to take a polygraph test does not violate the defendant's Fifth Amendment right against self-incrimination. *See Patton,* 580 N.E.2d at 698. Accordingly, we find no error.[12]

 In sum, we hold: (1) the trial court erroneously required Carswell, as a condition of his probation, to pay for any counseling expenses his victims may incur related to the molestations; (2) Carswell may properly be prohibited from residing within two blocks of a school or playground as a condition of his probation, however, the portion of the condition regarding "any area where children congregate" is too vague; (3) Carswell may properly be required to submit to warrantless searches of his person and property as a condition of his probation; (4) Carswell may properly be required to submit to alcohol/drug detection tests to determine drug and alcohol use as a condition of his probation; and (5) Carswell may properly be required to submit to polygraph examinations for drug and alcohol detection as well as for treatment purposes as a condition of his probation, despite the lack of an express provision prohibiting *all* evidentiary uses; however, the portion of the first polygraph provision which required that said results be admissible in a subsequent court proceeding is improper.

For the foregoing reasons, the judgment of the trial court is affirmed except for the requirement that Carswell pay for counseling, the requirement that the polygraph results be admissible in a subsequent court proceeding, and for the remand for the trial court to clarify the residence restriction.

Affirmed in part, reversed in part, and remanded.

BAKER, J., and MATTINGLY, J. concur.

case to be a witness against himself." U.S. CONST. amend. V.

12. Mixed in with his other arguments and almost as an afterthought, Carswell notes that the trial court did not give him immunity from prosecution or restrict the admissibility of incriminating evidence of other unlawful conduct which may be admitted or disclosed by him in the course of court-ordered sex offender counseling. Carswell goes on to state that the rehabilitative end that the State envisions from this counseling will not be achieved unless we specify that the use of all incriminating statements, including those elicited during counseling, will be precluded in future proceedings. While we are not clear if Carswell is actually challenging the probation condition requiring him to get counseling, we note that he has nonetheless waived this issue on appeal by failing to develop an argument in regard thereto. *See Choung v. Iemma,* 708 N.E.2d 7, 13 (Ind.Ct. App.1999), *reh'g denied;* Ind. Appellate Rule 8.3(A)(7).